Gaston, J.
 

 In the year 1797, the late General Davie purchased from the Trustees of the University a body of .lands, situate on Yarnal’s creek, Chatham county, of which one William Hendricks had died seised, and which had es-cheated to the University for defect of heirs. Some short time previous to the 6th of January, 1810, having contracted or being in treaty with Anderson Crutchfield for the safe of these lands,
 
 he
 
 caused a survey to be made of them for the purpose of ascertaining their extent and boundaries with precision, and on that day by his attorney duly authorized, he conveyed the same by definite boundaries, as ascertained by that survey, but subjoined to this specific description the following general words: “including all the land owned by the said Davie on Varnal’s creek and waters,” and describr
 
 *149
 
 ing it also as containing by estimation 2,200 acres. In- the deed the bargainor for himself and his heirs covenanted with the bargainee and his assigns to warrant and defend the bargained premises against all lawful claims under the following provisos, viz: “ provided nevertheless that if the above courses and distances should take in any lands held by any title prior to that from which the said Davie derived his title, then the said Davie is not to be accountable for it; provided also that if the said courses and distances should not take in all the lands held or owned by the said Davie on the said Varnal’s creek and its waters, then the said Davie is to convey the same to the said Crutchfield, his heirs and assigns forever.” On the 6th of February, 1810, Anderson Crutch-field, by deed of bargain and sale, in consideration of the sum of one hundred and thirty dollars, conveyed unto Stephen Chamness a certain tract of land on Varnal’s creek, containing by estimation one hundred and fifty acres, with special and defined boundaries “ including all this tract owned by the said Crutchfield:” and thereupon Chamness entered into the possession thereof. Eighteen years afterwards, in making certain surveys for laying entries on alleged or supposed vacant land, it was discovered that in the survey made for Gen’l Davie, the surveyor had, by mistake, left out a part of a small tract of which Hendricks had died seised, and which belonged to Gen’l Davie, under the conveyance from the trustees.. Hendricks, it seems, had, on the 17th June, 1778, obtained a grant from the State for a tract estimated to contain 213 acres, of an oblong shape, extending about 320 poles from East to West, and about 190 from North to South. It was known that the lines of this tract comprehended within them an older grant to one Whitehead, and that, as to the part so covered, it conveyed no title to Hendricks. In surveying this tract as part- of the body of lands belonging to Gen’l Davie, the surveyor ran from the South East corner of the Hendricks Patent, north eighty-four poles instead of 190, and stopped at the South Eastern corner of the Whitehead patent; thence ran West 320 poles
 
 along Whitehead’s line
 
 to the back line of the Hendricks patent; thence South and East to the beginning. White
 
 *150
 
 head’s north line extended but 160 instead of 320 poles, so ^lat) *n ^acb Whitehead’s grant left for Hendricks’ patent a piece of about 100 acres, of an oblong form, lying between the back line of Whitehead’s patent and the back line of Hendricks’ patent, which piece was overlooked by the surveyor and excluded from this survey. The conveyance from Crutchfield to Chamness comprehended all that part of the Hendricks patent then ascertained by the survey to be without the Whitehead patent; but did not cover the piece since ascertained to be without it, nor make any reference thereto, nor give ány description of the land conveyed, other than was to be found in its courses and
 
 termini,
 
 unless it be in the words herein before mentioned, “including all this piece owned by the said Crutchfield.” Within the courses and termini of the deed to Chamness there are upwards of 160 acres.
 

 In 1830 John Chamness filed this bill against Crutchfield and the heirs of Gen’l Davie, and in it he alleges that in 1810, his father, Stephen Chamness, purchased lrom Crutch-field the Hendricks tract of land, for $130, and took from him a conveyance therefor, pursuing the courses and distances, which, according to the survey recently made, were supposed to embrace it; that at the time of making said conveyance, the parties were uncertain where the lines of the Hendricks tract were; that it was known that the grant to Hendricks covered a part of Whitehead’s land; and Crutch-field was not willing to pursue the courses of the grant for fear of selling more land than he owned, and thereupon it was expressly agreed between the parties, that the said Crutchfield would make to the said Stephen a title for all the land within the Hendricks grant, owned by him, if the courses called for in the deed did not convey it. He also alleges that his father has since conveyed to him all the land comprehended within the Hendricks grant by its proper courses. The prayer of the bill is, that the defendants may be decreed to convey to the plaintiff the part of the Hendricks grant which is not comprehended within the conveyance to plaintiff’s father. The heirs of Gen’l Davie, who are non residents, have put in no answer to the bill, and
 
 *151
 
 publication is stated to have been made, and the bill is set down to be heard against them
 
 ex parle.
 
 Crutchfield has answered, and in his answer does positively deny the agreement stated by the plaintiff, denies that he ever sold or intended to sell to the plaintiff's father, any other land than that described and conveyed in his, the defendant’s deed, and denies explicitly that he ever promised at any time to convey any other or more land than the land therein conveyed. To this answer there is a general replication.
 

 To entitle the plaintiff to a decree, it is necessary that he should clearly establish that his father actually contracted for, and purchased from the defendant Crutchfield, the whole of the land covered by the Hendricks patent, except what might be taken away by Whitehead’s older grant, and that by mistake, the conveyance made in execution of that well understood agreement, failed to conform thereto. If a conveyance or other deed is by accident or mistake framed contrary to the intention of the parties in their contract on the subject, a Court of Equity, upon the mistake or accident being established, will interfere, to prevent one of the parties from taking an unfair advantage thereof. The allegations in the bill very indistinctly charge such a mistake, but rather seem to place the plaintiff’s claim to relief upon the ground of a parol promise of the defendant at the time of executing the conveyance. It is clear, we think, that upon
 
 that ground
 
 the bill cannot be supported. The written executed contract must be regarded as declaring the whole contract then made, and such promises, if receivable at all, are admitted merely as evidence tending to shew the Equity»
 
 dehors
 
 the conveyance, arising from the misapprehension of the parties. It is exceedingly clear that such evidence is to be regarded with extreme caution, for otherwise the courts, would violate in effect the rule which they profess to hold sacred, that the operation of a deed or other written instrument shall not be abridged, enlarged or altered, by parol testimony.
 

 The witnesses mainly relied upon to make out the plaintiff’s case, are Stephen Chamness and John Teague. The depositions of the former have been taken twice, and of the
 
 *152
 
 latter three times by the plaintiffs, and the representations of each witness, given on these different examinations, are not the same. In the first deposition of Charmless, that of Uc-t0^er ^st> 183-2,■ he states that Crutchfield came to his house and asked witness if he did not wish to purchase a piece of land, which he (Crutchfield) had bought from Gen’l Davie; that witness replied that he did, and thereupon Crutchfield requested witness to go and shew him the land; that witness said that he did not know
 
 exactly
 
 where the right lines were, but thought he knew them
 
 pretty
 
 near, and went with Crutchfield on the land, but shewed
 
 no lines or corners.
 
 The witness in this deposition proceeds to state, that in a few days afterwards Crutchfield came again to his house to give him a bond to make a right to said land, and sat down and drew a bond- to make him a right to all the lands of Da-vie, which lay between four lines, (viz.) Whithead’s line, Chamness line and Stewart’s two lines; that shortly after this Crutchfield came again to the witness’s house to make him a deed, when witness observed that he understood that he (Crutchfield) had'sold the land to Johnson, but Crutchfield replied that he had not, that he had then got
 
 his deed and found out all the
 
 lines, and there was more land and better land than Johnson had shewed him; that while Crutchfield was writing the deed he said how he would begin and describe the land, and if the deed did not cover the land “ described” he would make the witness a deed which would cover it, if there was 500 acres; that witness told him he (the witness) thought there were some older claims within those boundaries; and Crutchfield replied, if there were any of a younger date than Davie’s he sold them all; and that about the year 1818 or 1819, after a suit was determined with Johnson, Crutchfield and the witness did run round the boundaries of Crutchfield’s deed, and found some land included therein covered by older titles, which he agreed to throw away, and the balance was to belong to the witness. Towards the close of the deposition it is added, that the agent for the plaintiff insisting that the witness should give the distances of the four lines above referred to, they are accordingly set forth, and, as they are set forth, comprehend
 
 *153
 

 the whole
 
 of the land which is described in the Hendricks patent. In the subsequent deposition of the same witness (that of March 1835) he begins with stating that in 1810 Crutchfield came to his house and sold him a tract of land, and thereupon he adds that they went over to John Teague’s, and there Crutchfield drew a bond to make him a title for a tract which he had bought oí Gen’l Davie, beginning at a Black Oak at Whitehead’s and Horneday’s corner, thence &c. &c
 
 .following the description of the land in
 
 Kendricks’
 
 patent:
 
 that he afterwards came to the witness and took up the bond and executed a deed, saying if it did not cover the land “ above described” that he would make another, and that afterwards (but he does not state when) he came again and did not deny he had sold witness the land, but stated that the deed did not cover the land, and that he meant to keep it. There is less variance between John Teague’s depositions. In them he states that Crutchfield and Chamness came to his house, as he understood, to draw a bond for title to a piece of land, which the former sold to the latter. Witness does not pretend to state, what were the contents of the bond, but while Crutchfield was writing, heard Chamness say “I buy all- that tract of land lying between Stewart’s line, Whitehead’s line and John Chamness’ line, be it more or less,” when Crutchfield said, “ I sell you all the land lying between those lines, but I will not warrant against any prior titles. In one of his depositions he adds that Chamness said the deed must begin at the Black Oak, Horneday’s and Whitehead’s corner; and Crutchfield replied at any corner where it is right; and in another he states also, that, at the time, Crutchfield remarked that he knew nothing of the quantity, quality or lines of the land. He states that after-wards fie witnessed the deed; that he did this at Chamness’ request; and-we should certainly infer from the connection in which-he speaks with respect to the execution of the deed and the promise of Crutchfield, that the latter, at the time d the execution, promised that if the boundaries of the'deed did not cover the land he had sold, he would make another; but in the deposition.of the 30th July, 1831, in answer to an interrogatory from the defendant “when
 
 *154
 
 did I promise to make another deed?” his answer is, “severi “1 years afterwards.”
 

 One other witness, Jesse Rosser, ha's' been examined for whose testimony all we can make out, as at all relevant to the case, is, that when a survey was- had, because of the dispute between Johnson and Stephen Chamness in relation to their interfering lines, which must have been about the year 1818, he heard the defendant Crutch-field say, that he had sold to Chamness all the lands that belonged to Gen’l Davie which; Were not covered by older titles, at which time the witness says he was between 15 and 25 years of age, and that in Feb. 1831, (since this bill was filed) he heard defendant Crutchfield tell Stephen Chamness that he had sold to said Chamness all the land described in his deposition, the boundaries whereof he sets' forth, and these are the boundaries of the patent to Hendricks.
 

 With respect to the last witness, it is testified by A. Fleming that he is a man of bad character, and not entitled to credit. With respect to Stephen Chamness, it is testified by Daniel Smith, that his veracity on oath is not entirely to be relied on. The last witness also testifies that he heard Stephen Chamness say, in August 1830 or 1831, upon occasion of said Chamnessf enquiring of the Witness, whether he had ever heard Crutchfield acknowledge that he had sold all between Whitehead’s and Johnson’s lines, that neither he nor Crutchfield knew any thing of
 
 this
 
 piece of land, until within a year or two before that time; and Mr; Snipes, who was the agent of General Davie in selling the land to Crutch-field, who caused it to be previously surveyed, who had surveyed the land conveyed’ by Crutchfield to Stephen Chamness at the time of the dispute of the latter with Johnson, and who had also surveyed an entry of said Chamness, covering part of the piece in dispute, deposes that he never knew or heard of General Davie’s title being supposed to cover it, or of any claim being set up by Stephen Chamness and his son thereto, under the purchase from Crutchfield, until about the time of the institution of this suit. Willis Teague, who is the first subscribing witness to
 
 the deed,
 
 has been examined for the defendant, and he declares that he
 
 *155
 
 -saw the deed executed, and attested it as a subscribing wit ness, and that he then heard nothing said about any promise or agreement to make any other deed, though he also says, at a former occasion, if we understand him correctly, while the parties were writing, he heard Chamness say, if I buy -the land, I want it all, and Crutchfield said, yes, I sell you all that belonged to Gen’l Davie. We think that all the testimony offered to shew the execution of a bond for title, and
 
 to prove its con ten's,
 
 was in the present frame of the bill inadmissible. There is no allegation in the bill that any bond •or other writing in the nature of articles had been executed between the parties; and the bill, had such been the fact, ought distinctly to have averred that matter, in order that the defendant might answer thereto, and if he denied the allegation, or confessed or avoided it, a distinct issue might have been made up, to which the proofs should be taken. But no objection has been made to this evidence, and we have accordingly considered it. Our impression upon it is, that there was a bond, but we have no reason to believe that it stipulated to convey any other land than was conveyed by the subsequent deed. We can place no reliance on the deposition of Stephen Chamness. Independently of the very suspicious shape in which he presents himself — first conveying the land to his son,' and then becoming the witness to establish his title — of his acting in the taking of the proofs in the character of his son’s agent — and of the doubts expressed in regard to his veracity. — his two depositions are directly at variance upon one circumstance, in which his memory could scarcely fail him, or which, if his memory did fail him therein, shews that it is unsafe to trust to his recollection. In the first of them he distinctly declares that Crutchfield came to
 
 Ms
 
 house to give a bond for title, and then sat down and wrote it; in the other that the parties went to John Teague’s to write the bond, and that the bond was there written. But besides this, it is morally impossible that his statement in regard to the contents of the bond can be correct. In both the depositions he undertakes to set forth the boundaries of the tract, as
 
 described in the bond,
 
 and represents Crutchfield as binding himself to convey ac
 
 *156
 
 cording to the boundaries of the original patent, which patent, it is admitted, was known to comprehend land to which ' ' . . . , there was an outstanding superior title.
 

 Put his deposition out of the way, and there is no proof which can plausibly justify a court in ordering the conveyance to be corrected. John Teague does not pretend to know the contents of the bond, and if the conveyance which was executed and accepted as conforming to the requirements of the bond did, in truth, conform thereto, (and so we are bound to presume until the contrary is shewn,) there would be no security for men’s rights; if the solemn and authentic memorials of their final agreement were to be shaken by the imperfect recollection of witnesses, as to what passed in the course of the negotiation. There is a vague phrase, however, in the deed, which has been seized on by the plaintiff as a circumstance tending to support his representation of the contract. After the specific description of the land conveyed, follow the words “including all this tract owned by the said Crutchfield.” But the phrase is too equivocal to furnish a satisfactory foundation, whereon to build an argument, either for or against the plaintiff’s construction. There is nothing in the deed to shew that by the words “ this tract” is intended the tract granted to Hendricks. No
 
 tract
 
 is before mentioned, and there is no designation of the subject matter of the conveyance, other than by its estimated quantity and its metes and bounds. “This tract,” therefore, can only refer to the piece of land so described, and the phrase cannot import that more than the land so described is conveyed, or intended to be conveyed. It would seem, rather, though this interpretation is little better than conjectural, to imply, that even of the land comprehended within the metes and bounds described,
 
 the
 
 conveyance is to include only so much as is owned by Crutchfield. The truth probably is, that, until the conveyance was made from Davie’s attorney to Crutchfield, he knew little of the extent or boundaries of the land in respect to which he and Chamness were treating. It appears that he applied to Chamness for information in regard thereto, and the latter gave it, but shewed no
 
 lines
 
 nor
 
 corners.
 
 He does not pretend to say
 
 *157
 
 that he pointed out
 
 this
 
 piece, as constituting a part thereof. Upon the whole evidence it is manifest, that, when the parties contracted, and when the deed was executed, this piece was not considered as forming a part of the thing bought and sold. It was not regarded in the estimate of value. Nothing was paid or received therefor, and the attempt now set up to obtain a conveyance of it has no equitable foundation on which to rest. We think the bill ought to be dismissed with costs.
 

 Per Curiam, Bill dismissed with costs.