On 10 April, 1837, the plaintiff gave to the defendant Franck his promissory note for $5,000, payable 1 January, 1839, in part of a debt he then owed him; and on 13 February, 1838, Franck indorsed it to defendant John Jones. Battle and Franck then resided in Henry County, Alabama, where the transaction occurred, and Jones in Onslow County, in this State. In June, 1839, and January, 1840, Battle made payments on the note, which together amounted to $3,469; and on 23 December, 1840, Jones sued out an original attachment in Onslow County for the balance due on the note, and summoned the defendant John A. Averitt as garnishee, who was the general agent of the plaintiff in this State, and in his garnishment confessed that he had in his hands cash and effects of Battle to the value of $1,158.67; and such proceedings were had therein that in August, 1841, judgment was recovered against Battle for $1,732.36 for principal money and $165.47 damages for interest, and also judgment against the garnishee for the sum confessed by him, which he, Averitt, paid.
(568) Previous to 1837, Franck was indebted to John Jones in two bonds, which together amounted to about $2,800, which the latter deposited with George Jones, also of Henry County aforesaid, and took his receipt therefore; and he, George Jones, received from Franck, in part payment thereof, the bonds of other persons residing in that part of the country to the amount of about $200, and then George Jones died. In February, 1838, John Jones went to Alabama for the purpose of getting the business settled with Franck and the administrator of George Jones; and then Franck, wishing to raise money and also to have again *Page 393 
the use of the bonds he had transferred to George Jones as aforesaid, proposed to John Jones to transfer to him the above mentioned note of Battle for $5,000 and take in part for the same the receipt given for his bonds by George Jones, and the residue in money; and it was so agreed, after consulting the administrator of George Jones, who said he would return to Franck the bonds the latter had passed in payment, and surrender his (Franck's) bonds, on which a balance was still due. Thereupon Franck indorsed, to John Jones, Battle's said note, and John Jones assigned to Franck the said receipt, which George Jones had given him, and returned to North Carolina.
In June, 1840, an original attachment was sued out in Henry County aforesaid, in the name of Franck against the estate of John Jones for $1,937 as due to Franck from Jones as guarantor and assignor of the said receipt, which was served — the time not appearing — in the hands of Battle as garnishee, who at Autumn Term, 1841, made his garnishment, "that he was indebted to the defendant John Jones in the sum of $1,082.10 as a balance on a note for $5,000, payable to the plaintiff Franck, and by him transferred to said Jones, on which said Jones had sued said garnishee by attachment in North Carolina." At the same term a suit of inquiry was executed and the damages (569) assessed at $2,366, and judgment given therefor, and also judgment against the garnishee condemning the said sum of $1,082.10 to the use of the plaintiff.
In April, 1848, this bill was filed in Onslow against John Jones, Franck, and Averitt, and it states that the plaintiff Battle had no due notice of the suit by attachment of Jones against him, and that he paid to Franck the sum of $1,082.10, so condemned in his hands as garnishee, on account of his said debt to John Jones and in part of Franck's recovery against said Jones; and that Jones and Averitt had notice of such payment, and that, notwithstanding, Jones procured Averitt to pay to Jones the said sum, being part of the sum of $1,158.67 so condemned in the hands of Averitt to the use of Jones. The bill further states that in fact the note for $5,000, assigned by Franck to Jones, did not belong entirely to Jones, but that he took it upon trust in part for Franck, and to a great amount than the said sum of $1,082.10; and it insists that it is unjust that the plaintiff should thus be compelled to pay the debt twice to the extent of $1,082.10, and prays that the then defendants, or some or one of them, may be decreed to pay the plaintiff the said sum, with interest thereon from the time he paid the same to Franck.
The answer of Franck disclaims, and that of Jones denies that he (Franck) had any interest in the note for $5,000 after the assignment to Jones, or now has any in the judgment thereon. Franck also denies that the plaintiff paid him the sum confessed in his garnishment, viz., *Page 394 
$1,082.10, or any part of it; and he says that the attachment was taken out for the benefit of the plaintiff, and prosecuted by him, in order, if possible, to stop that sum in his own hands towards indemnifying him (Battle) against his liabilities as the surety of Franck; and that he (Franck) is not entitled to or liable for anything in the premises, (570) as he became insolvent in 1840, and was duly discharged as a bankrupt on 2 May, 1843.
The answer of Averitt denies any collusion with Jones, and states that he gave the plaintiff advice of the attachment soon after it was served in his hands, and received instructions from the plaintiff to employ counsel to defend it, upon the ground of the attachment of the debt in Alabama, so as, if possible, not to allow judgment to be taken against him here, while he might be liable as garnishee there; and that, accordingly, this defendant spoke to counsel, who advised him that no plea could be put in unless the then defendant, Battle, would replevy by giving bail — which he did not do. This defendant annexes to his answer a letter from Battle to himself under date 5 April, 1841, containing those instructions.
The answer of Jones states that the whole sum recovered in his attachment against the plaintiff was justly due and belonged exclusively to himself, and was recovered without any collusion with Averitt. This defendant further states that he had no information from Battle, or suspicion, that the attachment had been taken out against him in Alabama until the judgment had been rendered therein, and denies positively that he owed Franck or was liable to him for anything upon the demand for which the attachment was brought, or any other. He states that, in fact, very soon after he transferred to Franck the said receipt of George Jones, the administrator of said George settled with and fully satisfied him (Franck) therefor by returning to him the bonds Franck had before transferred to George Jones, and by canceling or surrendering to Franck his bond, so as to extinguish the balance due thereon; and the said administrator was a young man, inexperienced in business, and a nephew and under the influence of Franck, and omitted to take up the said receipt when he made such transfer and surrender. He (571) further states that if such had not been the case, Franck would not have had any claim against this defendant on the receipt and his indorsement or guaranty thereof, because the estate of George Jones was ample to make good the said demand to Franck and was immediately in his vicinity; and moreover, because, at the time of the transfer, he (Franck) was himself indebted to the estate of George Jones in a larger amount and continued so indebted up to the time of his bankruptcy aforesaid. He further states that he is informed and believes that Battle became involved as the surety of Franck for large sums, *Page 395 
which he was compelled to pay; and that upon ascertaining the insolvency of Franck, prior to suing out the attachment in Alabama, he (Battle) and Franck devised the plan of bringing that attachment in the name of Franck, but really for the benefit of Battle, with the view of effecting a recovery of a sum from this defendant, without notice to him of the suit, of which no part was due, as was well known to both of them; and he denies his belief that the plaintiff ever paid to Franck or any other person any part of the sum condemned in his hands in that suit.
A transcript of the proceedings in the matter of Franck's bankruptcy is filed; and the judgment against Jones does not appear in the inventory of his effects, while in the schedule of his creditors appears the estate of George Jones, deceased, for the sum of $1,500 on judgments.
The other material evidence is that of the administrator of George Jones and of the attorney who instituted and conducted the suit in Alabama. They support the answer of the defendant Jones; the former stating that in 1838 he satisfied to Franck the demand on his intestate's said receipt, and in the manner set forth in the answer; and also, that if anything had remained due thereon, the estate was sufficient to discharge the whole thereof, and that in fact Franck owed the (572) intestate $1,500, and never paid any part thereof, and also owed the witness about $1,600 otherwise. The attorney likewise deposes that he brought the suit at the instance of Battle, the garnishee, and prosecuted it under his direction and for his benefit, for the reasons stated in the answer; and that it was understood between the witness Franck, and Battle, that Battle was not to pay any part of the condemnation money, but was to have the judgment as partial indemnity for what he was bound to pay as surety for Franck.
Perhaps no case could present in a stronger light than the present case does the propriety of the rule laid down in Irby v. Wilson, 21 N.C. 568, that an ex parte judgment against a person, not a citizen or inhabitant of the country, has no extraterritorial obligation, and ought not to be respected by the courts of other countries further than it may be made to appear to be right. But resort need not be had to that legal principle, in opposition to the claim set up in the present bill; since, however regular the proceedings were and however conclusive the judgment might be in a court of law, the plaintiff, in this judgment in Alabama, or the garnishee, most clearly cannot claim benefit from it in a court of equity, when it so plainly appears to be against conscience, *Page 396 
for a demand wholly unfounded, and obtained by surprise, that is, without defense, as far as is seen. In this point of view, the circumstance that the judgment was rendered in a sister State becomes immaterial; for if it had been a judgment of a court in this State, obtained (573) under such circumstances against an inhabitant of Alabama, our court of equity, upon its own principles, would undoubtedly restrain the plaintiff from making any use of it, and much more refuse to aid him in any manner to enforce it. Bissell v. Bozman, 37 N.C. 154;Cranstown v. Johnston, 3 Ves., 170; 5 Ves., 277. The judgment in this State in favor of Jones against Battle is not impeached at all. It is said, indeed, in the bill that the plaintiff had no notice of the pendency of the suit, and also that a part of the debt recovered is in trust for the plaintiff's debtor, Battle; and both of those statements are positively denied, and the former proved to the false, and the latter not supported by any evidence. It therefore clearly appears that the whole debt recovered by Jones was truly due him; unless, indeed, there is to be an abatement in respect of the sum condemned in the plaintiff's hands as garnishee, which he said he paid to Franck, the plaintiff, in the attachment in Alabama. Now, it appears upon the clearest evidence, not in any degree discredited, that the plaintiff has not paid Franck one cent on that account, and that from the beginning it was distinctly understood that no such payment was to be made, and that the whole proceeded was a contrivance between those two persons to defeat Jones of his debt by precluding him from a remedy therefor by attachment of Battle's estate in North Carolina. The plaintiff, therefore, cannot claim upon the idea that he has the merit of having paid a debt for Jones by compulsion of law, since he has made no such payment. The cause, then, is brought down to the merits of the demand of Franck against Jones, for which judgment was rendered. Now, as to that, the proof is plain that there are none whatever; for the person primarily liable, George Jones, left assets to discharge the debt, and accessible to Franck, and, moreover, it had actually been satisfied by the administrator of George Jones, and Franck (574) was still indebted to the estate about $1,500. There could not, therefore, be a more unconscientious attempt to set up an unjust demand; and the bill must be dismissed, with costs to the defendants Jones and Averitt.
PER CURIAM. Decree accordingly.
 *Page 1