R. L. SMITH v. ATLANTIC COAST LINE RAILROAD COMPANY.

(Filed 1 October, 1913.)

1. Carriers of Goods—Bills of Lading—Contract of Carriage—Acceptance of Shipment—Liability.

A common carrier of freight assumes the duty and responsibility of transporting and delivering the freight it accepts for that purpose, and it is not necessary that the contract of carriage should be evidenced by a bill of lading or other writing in order to subject the carrier to the payment of damages of that character in an action brought for that purpose.

2. Carriers of Goods—Live Stock Bills of Lading—Evidence.

It is necessary for a common carrier, relying upon a stipulation in its live-stock bill of lading limiting the value of the stock in event of recovery, to show that the shipment was made under this form of its bills of lading, and the mere fact that such a bill of lading is in the possession of the plaintiff, without its identification as being the one relied on, is insufficient.

3. Same—Interstate Commerce Commission—Classifications.

The classifications of the Interstate Commerce Commission of rates of freight on live stock is irrelevant when the carrier, relying upon a stipulation in its live-stock bill of lading, fails to show that the shipment was made under it.

4. Appeal and Error—Objections—Evidence—Prior Testimony.

Exceptions to the competency of evidence will not be sustained on appeal when the same witness has previously testified, without objection, to the same facts in another part of his examination.

SMITH *v.* R. R.

**5. Carriers of Goods—Live Stock—Damages—Evidence.**

> In an action to recover damages from a carrier for the negligent killing of a mule in a car-load shipment of live stock, evidence is competent that the mule was found dead at the destination of the shipment with its foot through the slats of the cattle car where a piece of the slat had been, for some time, broken off, which otherwise would not have permitted it; that this was the only place in the car through which a mule could have gotten its foot; that the mule had apparently fallen down in this position and could not again get up.

APPEAL by defendant from *O. H. Allen, J.,* at April Term, 1913, of PITT.

This is an action to recover damages for injury to a horse and a mule, caused by the negligence of the defendant.

The following verdict was returned by the jury:

1. Was the mule mentioned in the complaint injured and killed by the negligence of the defendant: Answer: Yes.

2. If so, in what amount has the plaintiff been damaged thereby? Answer: $200.

3. Was the mare mentioned in the complaint injured by the negligence of the defendant? Answer: Yes.

4. If so, in what amount has the plaintiff been damaged thereby? Answer: $50.

5. Did the plaintiff file claims with the defendant for said injuries, as set out in the complaint? Answer: Yes.

Judgment was entered in favor of the plaintiff according to the verdict, and the defendant excepted and appealed.

*W. L. Evans for plaintiff.*
*Harry Skinner for defendant.*

ALLEN, J. The plaintiff did not introduce a bill of lading, but he offered evidence tending to prove that on 4 January, 1911, he purchased several horses and mules in Richmond, which were delivered to a connecting line of railway, and were delivered to him at Greenville by the defendant; that he paid the freight to the defendant, and that one mule was dead and a horse injured, when the cars reached Greenville.

The plaintiff further testified that he was present and saw the stock loaded on the cars in Richmond, and that no bill of lading was given to him. All of this evidence was objected to by the defendant, upon the ground that the contract of carriage could not be proven by parol, and at the conclusion of the evidence there was a motion for judgment of nonsuit, the defendant contending that as no bill of lading had been introduced, the plaintiff could not recover.

The position of the defendant cannot be sustained.

In Hutchison on Carriers, sec. 118, the author says: "No receipt, bill of lading, or writing of any kind is required to subject the carrier to the duties and responsibilities of an insurer of the goods. As soon as they are delivered to him for present carriage, and nothing necessary to their being forwarded remains to be done by the owner, the law imposes upon him all the risk of their safe custody as well as the duty to carry as directed. He is regarded as exercising in some sort the functions of a public office, and the law is said to impose upon him his duties and obligations upon this ground as well as upon the ground of the contract, and as soon as the delivery to him and his acceptance are shown, the law imposes the duty and responsibility in virtue of his public employment."

The Supreme Court of the United States also said in *Mobile and Mon. R. R. Co. v. Jurey,* 111 U. S., 591: "No particular form or solemnity of execution is required for a contract of a common carrier to transport goods. It may be by parol, or it may be in writing; in either case it is equally binding." And our own Court declared in *Berry v. R. R.,* 122 N. C., 1003: "Delivery of a bill of lading is not necessary to fix liability upon the defendant. *Wells v. R. R.,* 51 N. C., 47."

No evidence was offered identifying the paper in possession of the plaintiff, or the one held by the defendant, or connecting either with the shipment in controversy, and as no bill of lading containing a valuation clause was in evidence, the classifications of the Interstate Commerce Commission were immaterial and were properly excluded.

The plaintiff testified that no bill of lading was given to him, and he explained the possession of the paper, in form a bill of

lading, by showing that after the defendant filed an answer setting out certain stipulations, which it alleged were in the bill of lading under which the shipment was made, his counsel wrote to the party from whom the horses and mules were purchased in Richmond, asking for a form of bills for shipments of stock, for the purpose of comparison with the allegations in the answer, and that the paper he had was the one sent him in compliance with his request.

The paper in possession of the defendant's counsel purported to be a copy of a bill of lading, but no evidence was offered showing when it was made, or otherwise explaining it.

The defendant also excepted to the admission of the following question and answer:

The plaintiff was asked, "Would it have been possible, from your observation, for that mule's foot to have gone through the crack unless there had been a piece broken out?". He answered by saying that she could not have done so, in his opinion; that he noticed the car, and that that was the only place that a mule could have gotten its feet through; that the plank at that point had been split off and was an old break.

It is not disputed that the foot of the mule was through the crack, and it was favorable to the defendant to show that there was no other hole in the car.

It follows that the only part of the answer of the witness that was material is the statement, "that the plank at that point had been split off and was an old break." This evidence was, in our opinion, competent, but if not, the defendant could not avail itself of the exception, as the same witness testified to the same facts in another part of his examination, without objection.

He said: "When the shipment reached Greenville there was a mule dead in one car, and one of the horses was severely injured in another. The mule had her feet hanging in a crack of the car about waist high from the floor, and she had apparently fallen down on her back while in that position and could not get up. That the car was slatted with narrow cracks between the slats about 2 inches wide, but at the point where the mule's

feet were hung a piece had been broken out, making the crack at that point much larger. The slats of the car were about 2 inches wide, and at that point about half of the slat had been broken out, making an opening about 4 inches wide, and large enough for the mule's feet to catch in. That he examined the car thoroughly, and that the break in the slat at the point mentioned had the appearance of having been done for some time, as the broken slat was dirty and colored different from a new break."

The principles announced in *Adams Express Co. v. Croninger*, 227 U. S., and in other cases following it, are not involved in the decision of this case, as no bill of lading containing a valuation clause was in evidence.

The special instructions requested, predicated on the presence of a bill of lading, and the materiality of the classifications of the Interstate Commerce Commission, were properly refused, and as the exceptions to the charge are not considered in the brief, they are deemed to be abandoned. We find