(505) This action was brought to recover damages for injury to a car-load of household goods, shipped by plaintiff from Oscawana, N. Y., to Carthage, N.C. The goods were shipped under an oral contract for their transportation from the beginning to the end of their journey and their delivery at the terminal point to the consignee. The goods were damaged during the transit, as the jury find, by the negligence of the defendant in transferring them from its car, in which they had been originally and carefully packed, to a car of a connecting line, and also by the careless manner of stowing or arranging them in that car. Defendant alleges that they were shipped under a written contract of carriage, with a specified valuation clause inserted in consideration of a reduced charge or toll for the carriage, it being $10 per 100 pounds, and other stipulations restricting its liability for loss from negligence to its own line or its portion of the through route, and also in other respects; but they need not be dwelt upon, as the decision of the case will turn upon other matters. After the goods had arrived at their destination, plaintiff signed a bill of lading and placed it among the claim papers, as he said, by inadvertence, not meaning thereby to change the contract of shipment, which contained no clause of limitation as to liability or value in case of loss, and that this paper was not signed by him until after the goods arrived in Carthage. That he did not know how this bill got into his files, and he signed it not knowing what it was and by accident or mistake in making up his claim papers.
The following is the verdict of the jury:
1. Did the plaintiff deliver to the defendant for transportation from Oscawana, N. Y., to Carthage, N.C. a car-load of furniture and household goods, as alleged in the complaint? Answer: Yes (by consent).
2. If so, were said furniture and household goods damaged by the negligence of the defendant, as alleged in the complaint? Answer: Yes.
3. Did plaintiff and defendant make a written contract for the transportation of said property, as alleged in the answer? Answer: No.
4. What damage, if any, is the plaintiff entitled to recover? (506) Answer: $2,671, with interest from September, 1911.
Judgment was entered upon the verdict, and defendant appealed.
After stating the case: The decision of this appeal turns upon the question as to what was the contract of the parties. If the defendant undertook, for a consideration, to carry the goods from Oscawana, N. Y., to Carthage, N.C. and safely deliver them *Page 407 
there, without restriction and with no release of its common-law liability, the defendant in undoubtedly answerable to the plaintiff for actual damage to the goods. His liability is that of an insurer, with certain well defined exceptions.
Hutchison on Carriers (3 Ed.), sec. 265 (sec. 170a), says: "The liability of the common carrier by law is as has been seen an unusual and extraordinary one, based upon considerations of public policy which have survived the wonderful change in the circumstances under which they were first arose. By that law the common carrier is regarded as a practical insurer of the goods against all losses of whatever kind, with the exception of (1) those arising from what is known as the act of God, and (2) those caused by the public enemy; to which in modern times have been added (3) those arising from the act of the public authority, (4) those arising from the act of the shipper, and (5) those arising from the inherent nature of the goods." Currie v. R. R., 156 N.C. 432.
But there was evidence of negligence on the part of the defendant, which was properly submitted to the jury, and they found that the goods had been damaged by its negligence; so that the question of its common-law liability is not important.
The serious and vital question arose upon the issue as to damages, plaintiff contending for full damages, and the defendant for an assessment according to the terms of the bill of lading. The court instructed the jury to find whether the goods were shipped under the unlimited oral contract or under the contract as evidenced by the bill of lading, and in a charge which was full and explicit upon this point, and exceedingly clear and forceful, and, we may add, very fair to the (507) defendant and as favorable as it was entitled to ask or could expect, the court explained the issue thus squarely made by the parties, and the jury have found that the contract was as stated by the plaintiff, oral and unrestricted, and was not the one contained in the bill of lading.
It was conceded by learned counsel for the defendant (who presented its side of the case with his usual ability and precision, confining himself to the vital issue of the case) that no particular form or solemnity of execution is required for a contract of the carrier to transport goods. It may be by parol, or it may be in writing. R. R. v. Patrick, 144 Fed., 632;R. R. v. Jarey, 111 U.S. 584; Hutchison on Carriers (3 Ed.), sec. 411 (242); Berry v. R. R., 122 N.C. 1003. In R. R. v. Patrick, supra, the Court says: "It (the contract of shipment) may be orally made, and when so made, in the absence of fraud or imposition, it is as obligatory upon both the shipper and carrier as a written one. The difficulty generally arises in establishing its terms by parol, but, *Page 408 
when once established, it determines the rights and obligations of the parties, except as affected by statutory law, as conclusively as if it had been in writing and in the accepted form of a negotiable bill of lading."
As the jury have found that the parties contracted orally, and not according to the usual terms of bills of lading issued by the defendant, which limited its liability and presented a rule for assessing the damages in case of a loss, we are not called upon to comment upon the course of decision in this Court as to the validity of stipulations in bills of lading, used in interstate commerce, restricting the recovery of damages to an appraised value at the initial point where the contract was made, nor need we discuss the effect of recent decisions in the Supreme Court of the United States upon that question (Adams Express Co. v. Croninger,226 U.S. 491) which were mentioned in the charge of the court. We simply determine the rights of the parties according to the oral contract, which the jury have found to be the true one, and not to have been altered in any way or waived by what afterwards transpired. In Smith
(508) v. R. R., ante, 143, we have dealt with the question involved in this case, though not upon the same facts. That case resembled more in its main features R. R. v. Patrick, supra, where the Court of Appeals of the Indian Territory (affirmed by the higher court) said: "But the paper issued and denominated a bill of lading in the case at bar was never signed by the carrier, and by reason of that fact it was not a bill of lading, and consequently the pretended limitation of liability stated therein was not binding on the appellee, and none of its provisions was binding on either the carrier or the shipper. Therefore there is no evidence that any verbal or written contract was made between the parties limiting the common-law liability of the carrier." But the principle of the cases is the same.
It having been determined that the goods were shipped under the oral contract to transport and deliver, without any restrictive features, the defendant is liable for the injury to the goods, according to the principles of the common law, as an insurer. Mitchell v. R. R.,124 N.C. 236; Hingle v. R. R., 126 N.C. 932. It was said in Mitchell'scase, supra: "It is the duty of a common carrier, irrespective of contract, but subject to reasonable regulations, to accept, safely carry, and deliver all goods intrusted to it. If the goods are lost, it must show what became of them, and if they are damaged, it must prove affirmatively that they were damaged in some way that would relieve it from responsibility. The plaintiff has a prima facie case when he shows the receipt of the goods by the carrier and their nondelivery or delivery in a damaged condition. Any further defense is in the nature of confession and avoidance. If the defendant pleads exemption by virtue *Page 409 
of a special contract, it must prove the contract and show that the loss or damage comes within some one of the exceptions. It must appear to the court as matter of law that the contract is reasonable in all of its essential features, and that the exceptions are not contrary to public policy. All such exceptions, being in derogation of common law, should be strictly construed." Currie v. R. R., 156 N.C. 432.
Without deciding the question, it may well be doubted whether (509) an agreement to waive or discharge the original contract by parol and substitute another for it, which is made after the loss had accrued or after breach, would be binding on the plaintiff, where not founded upon a new consideration. Hutchison on Carriers (3 Ed.), sec. 412 (243); The Delaware v. Oregon Iron Co., 14 Wall. (U.S.), at 603, and cases cited; Emerson v. Slater, 22 How., 28, 360.
In the absence of any exemption in the contract from its common-law liability, we must hold that defendant was an insurer, who is liable in all events and for every loss or damage, however occasioned, unless it happened by the act of God or the public enemy, or by some other cause or accident, without any fault or negligence on the part of the carrier, and expressly excepted in its contract, whether oral, or written in the form of a bill of lading. The Delaware v. Oregon Iron Co., 14 Wall., at p. 597. This is said by Justice Clifford, in that case, to be the best description of a carrier's obligation.
Something was said in the argument as to the Carmack amendment to the Hepburn Act of 1909 (34 Stat. at Large, 584, ch. 3591, U.S. Comp. Stat., Supp. 1909, p. 1149), providing that where goods are received for shipment in interstate commerce the initial carrier shall be liable for damages caused by itself or a connecting carrier, and making void any contract of exemption against such liability, but allowing the initial carrier to recover over against the connecting carrier, on whose line the loss or damage occurred, the amount thereof. We need not decide whether that act is applicable to the facts of this case, as defendant agreed by its oral contract to carry the goods and deliver them at Carthage, choosing its own intermediate agents or connecting lines for the purpose. At common law, carriers are not bound to carry except on their own lines; but they may by special contract subject themselves to liability over the whole course of transit. R. R. v. Pratt, 22 Wall., 123; R. R. v. McCarthy, 96 U.S. 258; 3 Enc. of U.S. Supreme Ct. Reports, p. 610 and notes. They thus extend their route with the help of others, and their position is the same as to liability for negligence as if the course and means of transportation employed were all their own. R. R. v. R. R., 110 U.S. 667. In this case, (510) *Page 410 
though, the jury have found, when the verdict is interpreted in the light of the pleadings, evidence, and the charge of the court, that defendant's own negligence caused the damage to the goods.
We have discovered no error in the trial or in the record.
No error.
Cited: Lyon v. R. R., 165 N.C. 147.