J. S. HOWELL ET AL. v. SEABOARD AIR LINE RAILWAY COMPANY.

(Filed 10 October, 1923.)

1. Carriers — Railroads—Acceptance of Freight—Fires—Presumptions—
   Damages.

   Where the carrier accepts goods offered to it for immediate shipment,
   it is presumed that its acceptance was that of a common carrier, and not
   as a warehouseman; and where the carrier has so negligently delayed
   the shipment that it was destroyed in the burning of its warehouse, it is
   responsible to the consignor in damages.

2. Same—Evidence—Interstate Commerce Commission—Burden of Proof.

   Where the evidence is conflicting as to whether the delay was caused by
   the shipper's instruction for prepayment upon the carrier's later calling at
   his place of business, according to local custom, and collecting freight, this
   does not affect the carrier's liability upon the facts of this case, nor does
   the regulation of the Interstate Commerce Commission requiring prepay-
   ment when the shipment is so forwarded, it being incumbent upon the
   carrier to refuse the consignment or forward the same, charges collect,
   with the burden on it to establish this defense.

APPEAL by defendant from *Cranmer, J.*, at February Term, 1923, of
FRANKLIN.

The plaintiffs delivered to the defendant at Louisburg, N. C., 5 Janu-
ary, 1922, a package of harness packed, addressed and in all respects
ready for shipment. The bill of lading was immediately filled in, signed
by the shipper and the agent of the carrier company. The agent of the
carrier called the shipper over the telephone and asked if the harness
was to be prepaid. He was told yes. The testimony of the witness for
the plaintiff is that the defendant's agent said that he would call and
get the money at plaintiff's office and that this was their customary way
of dealing. A witness for the defendant testified that the shipper re-
plied that he would call at the office of the defendant and pay the
freight. The inquiry was for the purpose of ascertaining whether the
goods were to be shipped prepaid or collect.

On 14 January the warehouse of the defendant company at Louis-
burg was destroyed by fire, including this shipment. The issues sub-
mitted to the jury were: "Is the defendant indebted to the plaintiff?
If so, how much"; to which they responded, "Yes; $320.88." The
freight was never paid and the evidence is that the bill of lading made
out the day the shipment was brought to the station was put in a
pigeon-hole in the desk but was not delivered until after the fire.

At the conclusion of the evidence the defendant moved for a judg-
ment of nonsuit which was overruled, and defendant excepted. Judg-
ment upon the verdict in favor of the plaintiff. Appeal by defendant.

*W. H. Yarborough and S. A. Newell for plaintiff.*
*Ben T. Holden and Murray Allen for defendant.*

CLARK, C. J.   The motion for nonsuit was met by this charge of the court which, as it relates to the controversy in this case, was as follows: "I instruct you, gentlemen of the jury, that the delivery of the bill of lading is not necessary to make the carrier liable for goods sent to it for shipment.   The delivery of goods to a common carrier raises the presumption that it received them as a common carrier, and the burden is upon the company to show that it received them only as a warehouseman and that the shipper either assented to that arrangement as, for instance, by request to hold the goods or was notified by the company that it held them for further orders."   There was no contest as to the value of the shipment.

In *Berry v. R. R.,* 122 N. C., 1002, which was almost identical with this case, the court charged the jury that where the shipper wrote the freight agent as follows: "Will you be kind enough to have these three pieces marked according to the address already tacked on, and forward as soon as possible to Newport, R. I.?   Will you mark them prepaid?   I will be at the depot tomorrow and get the bill of lading and pay the freight."   It was held that such letter was a direction for immediate shipment, and did not make the marking of the pieces as prepaid a condition precedent to the shipment.   The delivery of a bill of lading is not necessary to make a carrier liable for such goods as are sent to it for shipment.   When goods are delivered to a carrier for shipment, the presumption is that they are received for shipment and not for storage, and the burden is upon the company to show that it received the goods as a warehouseman and not as a carrier.   This case quotes *Wells v. R. R.,* 51 N. C., 47, that delivery of a bill of lading is not necessary to fix liability upon the defendant.   In the *Wells case* the Court said: "If the article is put on the company's platform at the depot with the knowledge of the agent, that amounts to an acceptance, and it is not necessary that it should be entered on the way-bill or freight bill or any written memorandum made in order to make the company liable for it to the same extent as if it is actually put on the freight train."

Both this case and *Berry's case,* cited above, have been cited and approved in a number of cases, including *Smith v. R. R.;* 163 N. C., 145; *McConnell v. R. R.,* 163 N. C., 507; *Lyon v. R. R.,* 165 N. C., 147; *Davis v. R. R.,* 172 N. C., 209; *Aman v. R. R.,* 179 N. C., 313, and others.

In *Berry v. R. R., supra,* after quoting the letter, the Court said: "This order was a direction for the immediate and earliest shipment of the goods.   The request to mark them prepaid was not a condition prece-

dent to the shipment but a collateral request that as a favor to her they be so marked, as she would pay the agent the next day."

"No formal acceptance is necessary where the agent has knowledge of the delivery of the goods with the intention that they be shipped, and makes no objection thereto." 6 Cyc., 413. The defendant offered no evidence that it received the goods as warehouseman rather than as carrier. Having received the goods, the burden was on the defendant to show that it did not receive them as a common carrier. Joyner, agent of the defendant company, admitted on cross-examination that it was the custom of the defendant to carry a charge account for freight with the plaintiff. The evidence is much stronger than in *Davis v. R. R.,* 172 N. C., 209, a very similar case, in which the plaintiff recovered and the Court found no error.

The appellant in his brief complains for the first time of omissions in the charge of the court. There was no request for instructions and no exception whatever taken by the defendant that the court did not fully present its contentions. Only exceptions taken at the trial or assigned in the case on appeal will be considered by this Court. *Rawls v. R. R.,* 172 N. C., 211; *Worley v. Logging Co.,* 157 N. C., 499.

It is true that under the regulations of the Interstate Commerce Commission freight rates were required to be collected on a prepaid consignment before the shipment was forwarded, but the railroad agent accepted this shipment to be forwarded, and before the freight was actually paid over to him the goods burned. Though the fire occurred before the goods left the station, they were by virtue of this agreement in possession of the goods as a carrier and not as a warehouseman.

Under the regulations of the Interstate Commerce Commission, the goods should not be forwarded marked prepaid until the freight had been actually received by the company. None the less, by the actual receipt of the goods for shipment, they were in possession of the defendant as a common carrier.

Goods could be accepted for shipment either prepaid or collect. If the goods had been marked "prepaid" when shipped, when in fact they were not, this would have been in violation of the regulations of the Interstate Commerce Commission. They were not shipped so marked nor was there notice that they were held for prepayment of freight.

Though the shipper stated, when asked by defendant's agent, that he wished them shipped prepaid, there is no evidence that they were held for lack of prepayment. They were in the hands of the defendant for shipment—that is, as a common carrier and not as a warehouseman, and it is responsible for the loss by its failure to ship. If it had demanded prepayment and this had not been made, then they would have been in the hands of the defendant simply as a warehouseman. On

16—186

the contrary, it accepted the goods absolutely for shipment, and there is testimony that its agent stated that he would call for the freight charges according to its custom with the plaintiff, who testified that he thought the goods had been shipped and that he stood ready to pay the defendant's agent whenever he should call, according to his promise.

The jury found that the delay in shipment was the neglect of the common carrier.

No error.