SHERMAN OWENS and Wife, G. L. OWENS; ROSA OWENS ANDERS and Husband, CAP ANDERS; DELIA OWENS; W. L. OWENS and Wife, DESSIE OWENS; ROXIE OWENS McCALL and Husband, GARLAND McCALL; SUSIE OWENS McCALL and Husband, ELBERT McCALL; DORA OWENS McCALL and Husband, J. P. McCALL; CANNIE OWENS GOLDEN and Husband, REAL GOLDEN; FRED OWENS and Wife, OTHA OWENS; AVERY OWENS and Wife, CASSIE OWENS; SPURGEON OWENS and J. T. OWENS, Sole and Only Heirs at Law of SHERMAN OWENS, Deceased, v. BLACKWOOD LUMBER COMPANY, INC., and CANEY FORK LOGGING RAILWAY COMPANY.

(Filed 14 October, 1936.)

**1. Trial D a—**

Upon motion as of nonsuit, all the evidence which tends to support plaintiff's cause of action is to be considered in its most favorable light for plaintiff, and he is entitled to every reasonable intendment thereon and every reasonable inference therefrom. C. S., 567.

**2. Adverse Possession C b—Evidence that plaintiffs had been in possession for twenty years adversely to defendant held for jury.**

Plaintiffs' evidence tended to show that they and those under whom they claimed by inheritance and *mesne* conveyances had been in possession of the *locus in quo* continuously for over twenty years, claiming to known and visible lines and boundaries coextensive with the calls in the State grant of their original predecessor in title, that they had used the land by cultivating, clearing, pasturing, fencing, building houses, planting an orchard, such acts constituting the usual and customary use of like lands in the community. *Held:* The evidence was sufficient to be submitted to the jury on the issue of plaintiffs' actual, open, continuous, notorious, and adverse possession of the lands sufficient to ripen title in plaintiffs under the provisions of C. S., 430, and defendants' motion to nonsuit in plaintiffs' action to recover damages for the wrongful cutting and removal of timber from the tract was erroneously granted.

**3. Adverse Possession A d—Where dower is not allotted, widow's registered deed in fee is sufficient ouster and notice to heirs.**

Plaintiffs claimed the lands in question by over twenty years adverse possession, plaintiffs' ancestor having gone into hostile and exclusive possession under a deed in fee from the widow of the grantee in a State grant. No dower was allotted to the widow. Defendants claimed that plaintiffs' possession was not adverse to the heirs at law until the widow's death and the termination of her dower rights. *Held:* Defendants' contention is untenable, since no dower had been allotted to the widow, and her registered deed was sufficient ouster and notice to the heirs of plaintiffs' adverse claim.

**4. Adverse Possession A f—Rule that tenant in common cannot hold adversely to cotenants held inapplicable to facts of this case.**

Plaintiffs' ancestor went into possession of the *locus in quo* under a deed in fee from the widow of the grantee in a State grant, no dower

having been allotted to the widow. Thereafter, the heirs at law executed a deed to plaintiffs' ancestor, but the deed was void as to some of the heirs at law for defect in their acknowledgment. Defendants contended plaintiffs' possession was not adverse to the heirs at law whose deed was defective, since under the deed plaintiffs' ancestor took only the title of those heirs whose acknowledgment was not defective and held as tenant in common with the other heirs. *Held:* The widow's deed was sufficient ouster as to all the heirs, and defendants' contention cannot be sustained, and the deeds from the widow and heirs at law, even if insufficient to constitute color of title, are competent evidence under the ancient document rule under plaintiffs' claim of adverse possession for over twenty years.

APPEAL by plaintiffs from *Oglesby, J.,* at May Term, 1936, of JACKSON. Reversed.

This is a civil action, instituted by Sherman Owens and wife, G. L. Owens, on 14 August, 1930, against the defendants for the recovery of damages for the wrongful cutting and removal of the timber on Grant No. 1155, calling to contain 100 acres of land, and for the wrongful construction over said lands of a logging railroad and other acts of trespass and damage thereto by the defendants over the objection and notice not to do so by plaintiffs; and for the recovery of said tract of land embraced in said grant. Pending the action and before the trial of same, the plaintiff Sherman Owens died and his heirs at law and children were made parties plaintiff and adopted the complaint as filed theretofore herein.

The plaintiffs allege that they are the owners in fee of said tract of land covered by State Grant No. 1155, from which said timber was cut and removed and the railroad constructed by the defendants; that they, and those under whom they claimed title, had been in adverse possession thereof for more than 50 years under color of title connected with said grant and other muniments of title and actually using and occupying the same for farming purposes and other uses to which they were capable of being used; that their title to said lands had ripened by the required adverse possession under color, the source of which was State Grant No. 1155, a junior grant, but issued and granted 18 February, 1878, recorded in Jackson County on 15 February, 1879; and that even without color of title plaintiffs claim to be the owners in fee of said lands by reason of adverse possession thereof for the required time by them and their deceased father, Sherman Owens, for more than 20 and 30 years, so the plaintiffs claim they are the lawful owners of said lands and that their title thereto has ripened by the required adverse possession thereof under color or without color. The plaintiffs contended and offered evidence to show that Sherman Owens moved on the tract of land with his family in May, 1909, and that he and family or his

tenants lived on the said lands and have been in the adverse possession of same until the action was brought on 14 August, 1930, and that prior to the year 1909, Sylvester Galloway and a Mr. Ellenburg built a house on said lands in the year 1904 and lived thereon; and that Sylvester Galloway is the grantee in State Grant No. 1155, and that the heirs of Sylvester Galloway by deed dated 30 September, 1907, conveyed the lands embraced in said grant to Sherman Owens, and that Sue E. Booker, née Sue E. Galloway and husband, William Booker, and Rhoda E. Fisher, attorney in fact, conveyed the lands to A. S. (Sherman) Owens by deed dated 14 December, 1903.

The defendant Blackwood Lumber Company alleges that it is the owner in fee of the lands described in the complaint and had a lawful right to cut and remove the timber therefrom and construct said railroad over same, under Grant No. 251, issued in 1796 to David Allison, assignee of John Gray Blount and William Cathcart, the same being dated 29 November, 1796, and registered in the Jackson County Public Registry, in Book H-8, page 346, *et seq.,* on 16 October, 1882, and said grant containing 250,240 acres, and embracing and covering the lands described in the complaint, and a chain of title connecting it with the title of Grant No. 251 aforesaid; that it was admitted or agreed by plaintiffs and defendants as appears in the record that said Grant No. 251 covers the lands described in the complaint and claimed by the plaintiffs, and that the defendants have a chain of title connecting them with the title of said grant, a senior grant to Grant No. 1155, the latter being the base of title claimed by the plaintiffs, and that said chain of title need not be introduced except the deeds from Highland Forest Company to Jackson Lumber Company and from Jackson Lumber Company to Blackwood Lumber Company, said agreement being subject to the conditions therein stated.

The defendant Blackwood Lumber Company further alleges and contends that it is the owner in fee of said lands described in the complaint on the ground that it, and those under whom it claims title, have been in the adverse possession thereof for more than 100 years, and pleads as defenses to the action and the right of the plaintiffs to recover herein the following: (1) Adverse possession of the lands in question for 30 years, subdivision 1 of sec. 425 of C. S.; (2) adverse possession under color of said lands for more than 21 years, subdivision 2 of sec. 425 of C. S.; (3) adverse possession of said lands for more than 20 years, sec. 430 of C. S.; and (4) adverse possession of said lands under color for more than 7 years, sec. 428 of C. S., and that such adverse possession was under known and visible lines and boundaries and ripened its title to said tract of land in controversy.

The defendants, over objection by plaintiffs, claimed title to the lands described in the complaint or an interest therein under purported deeds dated 20 July, 1908, from some of the heirs at law of Sylvester Galloway to R. M. Galloway and from R. M. Galloway and wife on same date to Highland Forest Company, as set forth in the record.

The court below signed the judgment of nonsuit appearing in the record. Plaintiffs excepted and assigned error, and appealed to the Supreme Court.

*W. R. Sherrill and E. P. Stillwell for plaintiffs.*

*R. L. Phillips and F. E. Alley, Jr., for defendant Blackwood Lumber Company.*

CLARKSON, J. At the close of plaintiffs' evidence and at the close of all the evidence the defendants made motions in the court below for judgment as in case of nonsuit. C. S., 567. The court below granted the motion at the close of all the evidence. We do not think the judgment of nonsuit in the court below, at the close of all the evidence, can be sustained. Upon a motion as of nonsuit, all the evidence which makes for plaintiff's claim or tends to support his cause of action is to be considered in its most favorable light for plaintiff, and he is entitled to every reasonable intendment thereon and every reasonable inference therefrom.

There are a great many questions set forth in the briefs of litigants which we do not think necessary now to consider.

The plaintiffs allege: "That, in addition to having a regular paper title or muniments of title with State Grant No. 1155 aforesaid, dated 18 February, 1879, as the base or source, from the State down to Sherman Owens, the plaintiffs and those through, by, and under whom they claim title have had open, continuous, notorious, and adverse possession under colorable title and under known and visible lines and boundaries, for many years, to wit, more than fifty years."

N. C. Code 1935 (Michie), sec. 425, is as follows: "The State will not sue any person for, or in respect of, any real property, or the issue or profits thereof, by reason of the right or title of the State to the same—(1) when the person in possession thereof, or those under whom he claims, has been in the adverse possession thereof for thirty years, this possession having been ascertained and identified under known and visible lines or boundaries; which shall give a title in fee to the possessor."

Section 426: "In all actions involving the title to real property title is conclusively deemed to be out of the State, unless it is a party to the action, but this section does not apply to the trials of protested entries

laid for the purpose of obtaining grants, nor to actions instituted prior to 1 May, 1917."

Section 430: "No action for the recovery of possession of real property, or the issues and profits thereof, shall be maintained when the person in possession thereof, or defendant in the action, or those under whom he claims, has possessed the property under known and visible lines and boundaries adversely to all other persons for twenty years; and such possession so held gives a title in fee to the possessor, in such property, against all persons not under disability." *Johnson v. Fry,* 195 N. C., 832; *Dill-Cramer-Truitt Corp. v. Downs,* 201 N. C., 478; *Reid v. Reid,* 206 N. C., 1.

In *Locklear v. Savage,* 159 N. C., 236, at pp. 237-8, it is said: "What is adverse possession within the meaning of the law has been well settled by our decisions. It consists in actual possession, with an intent to hold solely for the possessor to the exclusion of others, and is denoted by the exercise of acts of dominion over the land, in making the ordinary use and taking the ordinary profits of which it is susceptible in its present state, such acts to be so repeated as to show that they are done in the character of owner, in opposition to right or claim of any other person, and not merely as an occasional trespasser. It must be decided and notorious as the nature of the land will permit, affording unequivocal indication to all persons that he is exercising thereon the dominion of owner," citing numerous authorities. *Shelly v. Grainger,* 204 N. C., 488.

What is the evidence that plaintiffs have "possessed the property under known and visible lines and boundaries adversely to all other persons for 20 years"? The source of plaintiffs' title to said lands is State Grant No. 1155, issued to Sylvester Galloway by the State of North Carolina on 18 February, 1878, recorded in Jackson County, in Book G-7, at page 195, on 15 February, 1879, and described therein by metes and bounds is the 100-acre tract of land in question in this action. The *mesne* conveyances connecting the plaintiffs with said State Grant No. 1155, the source of their title, are as follows:

1. Power of attorney, dated 14 November, 1903, from Sue E. Booker, née Sue E. Galloway (Sue E. Galloway was the widow of Sylvester Galloway, deceased, who is the grantee in Grant No. 1155), to Rhoda E. Fisher, giving her full and complete power and authority to sell and convey lands and real estate, which was recorded on 8 September, 1905, in Book 23, at page 73.

2. On 14 December, 1903, Sue E. Booker, née Sue E. Galloway, and her then husband, William Booker, and Rhoda E. Fisher, attorney in fact, executed and delivered to A. S. (Sherman) Owens a warranty deed

in proper form with full covenants and warranty, conveying to him in fee simple the lands embraced in said Grant No. 1155, and with full description by metes and bounds as the same appear in said grant, which said deed was filed 12 October 1905, and duly recorded in Jackson County on 14 October, 1905, in Book JJ, at page 31.

3. Deed dated 30 September, 1907, from Sylvanus Galloway, Salina McCall, Jackson McCall, Garland McCall, Rufus Galloway, and others, heirs at law of Sylvester Galloway, to Sherman Owens, conveying to him all their right, title, claim, and interest in the tract of land in controversy and describing the same by metes and bounds and expressly in the premises call attention to the fact that Sue E. Booker and husband, William Booker, for a consideration of $200.00, had conveyed said lands to Sherman Owens by a "certain deed of absolute conveyance, with full covenants of warranty, duly executed—recorded in Jackson County, in Book JJ, page 31," and this last deed to Sherman Owens was filed on 8 October, 1907, and recorded in Jackson County, on 26 October, 1907, in Book NN, at page 489, et seq.

The plaintiffs offered evidence tending to show that they, and those under whom they claim title, have been in the actual, open, continuous, notorious, and adverse possession of the lands in question and as described in the complaint for more than forty years, and that possession has been ascertained and identified under known and visible lines and boundaries coextensive with the lines of Grant No. 1155 and the lines of the description in the two deeds to Sherman Owens for said tract of land.

The plaintiffs offered evidence tending to show that this possession of the land in question began about 40 years ago, when a man by the name of Mr. Ellenburg (now dead) went on the land for Mr. Owens, helped build the house, cleared up some of the land, and worked and stayed there for Mr. Owens; that in 1904 Sherman Owens and his son, W. L. Owens, went on the tract of land and went around the lines of the entire tract; that Sherman Owens could not read and he took his son and deeds and had his son read the calls, and they went around the land; that Sherman Owens and family moved on the land in May, 1909, and lived in the house and cultivated some of the lands, and, following this possession and occupancy by Sherman Owens and family of the tract of land, the plaintiffs offered the evidence of numerous witnesses who, as the tenants and lessees of Sherman Owens or his wife and heirs at law, actually lived on the land and possessed and occupied the same for the plaintiffs, beginning in 1910, when Sherman Owens and family moved, and continued thereafter until the year 1930, when the defendants went on the land and commenced cutting timber.

That this possession and occupancy of the land was continuous for more than 30 years by the successive tenants and lessees of the plaintiff, and evidenced by such use of the land as it was capable of at the time, that is, farming, cultivating, clearing, using firewood, pasturing, fencing, building houses and outhouses, sowing grass and planting trees for orchard, and making such use of the same as is or was usual and customary for farmers on mountain farms in the community.

The land in controversy was surveyed by one H. R. Queen, an expert surveyor. The beginning corner of Grant 1155, which covers the *locus in quo,* was well known to him and was a marked chestnut standing in Rocky Knob Gap, about thirty years ago (now down). There were marked trees on the first line and other marks. The 100 acres had visible lines and boundaries. These were known to Sherman Owens and his son, W. L. Owens.

Fred McCall testified, in part: "Sherman Owens is my uncle. I was looking after this property for Mr. Owens, when they sent him off he got me to look after it and take care of it for him, from 1919 to 1930. I rented it to Lawton McCall in 1919 and he went into possession of the land in 1919 and left in 1922, I think; Mr. McCall was to go there and take care of the place for me and look after it and keep people out from ranging, hunting, and fishing, and he lived on the property three years; he was the first renter I put there. During this period from 1919 to 1930 I kept the fences up on the place the best I could, ranged it and farmed it until the Blackwood Lumber Company drove on it. I kept 6 or 7 head of cattle on the property; yes, my brother had some and I got him and he helped me look after the cattle and to look after the place; this is my brother Charley and he is here. Charley and I would go over the property to look after it once and twice a week. The house burned down shortly after Lawton McCall moved away after 1922. Yes, Charley McCall had live stock on this land, five or six head, in addition to mine. I went ahead and looked after this property, kept up the fences the best I could and ranged my stock and did that each year, and also my brother, Charley McCall, helped me look after it each year and pastured his cattle there."

The land was suitable for pasturing, and that was one of the uses for which it was adapted. This evidence was competent, in fact, it was not objected to.

Then, again, the defendant Blackwood Lumber Company, Inc., recognized that Sherman Owens owned the land. On 10 April, 1928, James E. Walker wrote T. S. Fortner, in part, as follows:

BLACKWOOD LUMBER CO., INC.

MANUFACTURERS

HARDWOOD AND SPRUCE LUMBER.

EAST LAPORTE, N. C., April 10, 1928.

T. S. FORTNER,
Argura, N. C.

DEAR SIR: There is a piece of land on Tennessee Creek belonging to Sherman Owens. Some say it is about 100 acres and some say about 80 acres. . . .

Yours truly,
BLACKWOOD LUMBER CO.,
(Signed)　By JAS. E. WALKER.

Fortner, who for 20 years patrolled the land for defendant and its predecessors in title, testified, in part: "Mr. Walker was president of the Blackwood Lumber Company; his letters and checks said that he was president, I got a check once a month and it was signed by Mr. Davison. Mr. Walker sent me up there and he said him and Mr. Sherman Owens was on a trade about the land and he wanted me to go and see if the timber was any account and it was good looking timber, such as spotted oak and maple and I went and saw it. Mr. Walker said he was going to buy this land from Sherman Owens, that they were on a trade. . . . My duties were to travel over the land, keep down fires and cutting of timber and trespassing, put out fires and keep people from destroying timber. I patrolled 14,000 acres of them; yes, this Sherman Owens tract lies in this 14,000 acres. . . . Sherman Owens showed me where his line was. No, this letter of 10 April, 1928, from the president of the Blackwood Lumber Company was not the first I knew about the Sherman Owens tract. I had no instructions to patrol the Owens tract, I never told a man to get off of that property because it was Sherman Owens' land."

Ralph Rigdon testified, in part: "I was carrying the mail to Tuckaseigee in 1928 and 1929. I knew Sherman Owens at that time and James E. Walker, president of the Blackwood Lumber Company. I saw Sherman Owens and James E. Walker up at East LaPorte in the fall of 1928. Sherman Owens came and got me to bring him to East LaPorte and when he got there he run into Mr. Walker at the office and told him he had come to sell him that land and old man Walker told him all right, and asked him what he wanted for it and Sherman Owens said $15.00 an acre, and Mr. Walker told him he wouldn't buy it that way, that he would give him $15.00 an acre for it and run it out. (The

court restricted this evidence and permitted only for the purpose of showing Sherman Owens' possession of the property at that time and not as to the measure of damage.) This conversation took place out in the yard and when we first came down there Mr. Owens and Mr. Walker went in the office. Mr. Walker said he would have the land run out and pay him for whatever there was of it, and Sherman Owens claimed there was 100 acres and Walker said he understood there was about 80 acres. . . . Later on, two or three months after that first conversation, Sherman Owens came back again with me and when we drove up Mr. Walker came from the store and Sherman Owens and I got out and shook hands with Mr. Walker. Mr. Walker said at that time he wouldn't consider buying that land at all now, that he understood he had the oldest title to it, and that it belonged to the Blackwood Lumber Company."

There was plenary evidence to be submitted to the jury that plaintiffs "have possessed the property under known and visible lines and boundaries, adversely to all other persons, for 20 years," at least. If this be true, plaintiffs have a "title in fee." Section 430, *supra.*

It was contended by defendant that Sue E. Booker, née Sue E. Galloway, who was the widow of Sylvester Galloway, died in California in 1924, and the possession was not adverse until the date of her death. We cannot so hold. The record discloses that no dower was ever laid off to her.

In the record we find: (1) Deed dated 14 December, 1903, from Sue E. Booker, née Sue E. Galloway, and her then husband, William Booker, and Rhoda E. Fisher, attorney in fact, to A. S. (Sherman) Owens conveying to him in fee, with full covenants of warranty, the land in question. (2) Deed dated 30 September, 1907, from Sylvanus Galloway and others to Sherman Owens conveying to him the land in question, referring to above deed and reciting the conveyance. There is a slight defect in the acknowledgment as to part of the grantors in the deed of 30 September, 1907.

In *Whitten v. Peace,* 188 N. C., 298 (302-3), citing numerous authorities, it is said: "This Court has held, in *Norwood v. Totten,* 166 N. C., 649, that a deed executed by a wife, conveying land to her husband, void for failure of the probate officer to comply with C. S., 2515, is, nevertheless, color of title, and that adverse possession by the husband under such deed for seven years will ripen into a perfect title."

In *Graves v. Causey,* 170 N. C., 175, it is held (1st headnote): "Where the deceased owner of lands leaves a widow, who, without allotment of dower, remains on the lands until her marriage, and then conveys them, with her husband, in fee, for a valuable consideration, and the grantee has his deed recorded and enters into possession and

builds upon and exclusively uses the lands, the registration of the deed and the occupancy of the lands put the heir at law of the original owner upon notice of the act of ouster and hostile possession, and the continuous possession by the grantee, or those claiming under him, for seven years, under the deed as color, will ripen the title."

We do not think the contention of defendant can be sustained. The deeds, if not color, are at least some evidence, under the ancient document rule, to be submitted to the jury on adverse possession for 20 or 30 years, under statutes before set forth. *Thompson v. Buchanan*, 195 N. C., 155 (160-1); *Sears v. Braswell*, 197 N. C., 515.

For the reasons given, the judgment of the court below is

Reversed.