SHERMAN OWENS AND WIFE, G. L. OWENS, ET AL., v. BLACKWOOD LUMBER COMPANY AND CANEY FORK LOGGING RAILWAY COMPANY.

(Filed 13 October, 1937.)

**1. Evidence § 46—**

A nonexpert witness who has knowledge, acquired in some approved manner, of the handwriting of the person in question is competent to testify as to the genuineness or falsity of the handwriting in dispute.

**2. Appeal and Error § 39d—Where plaintiffs establish twenty years adverse possession, error in admitting evidence of color of title is immaterial.**

Plaintiffs claimed the *locus in quo* under seven years adverse possession under color and under twenty years adverse possession. Defendants objected to certain deeds in plaintiffs' chain of color of title on the ground that they were improperly registered and did not comply with N. C. Code, 997, 3305, 3308. *Held:* The deeds, having been on record for some thirty years, were competent under the ancient document rule to be submitted to the jury on the claim of adverse possession for twenty years, and error, if any, in admitting the deeds as color of title was not prejudicial under the facts.

**3. Boundaries § 3—Testimony of general reputation of corner held competent.**

Testimony of plaintiffs' witnesses to the effect that they knew the general reputation of the beginning corner of the tract of land in dispute as "a double chestnut in the Rocky Knob Gap," and that they had known of such general reputation 25 to 50 years prior to the institution of the action, *held* competent and properly admitted in evidence to establish the corner as contended for by plaintiffs, the testimony meeting all the requirements of the rule.

**4. Boundaries § 4: Appeal and Error § 39d—Admission of testimony held harmless in view of other competent evidence and contentions.**

Testimony of declarations of plaintiff tending to establish his corner as contended by him was admitted at the trial. Defendants objected on the ground that plaintiff was interested when the declarations were made, and that they were not against his interest. *Held:* Conceding the testimony was incompetent, under the facts of this case its admission was not prejudicial, since the corner was abundantly proven by other competent testimony and its location was not seriously disputed by defendants, and other testimony of like declarations by plaintiff was admitted without objection.

**5. Trespass § 7—**

The measure of damages for wrongful trespass upon realty in cutting and removing timber is the difference in the value of the land immediately before and after the trespass.

**6. Evidence §§ 46, 47—**

Nonexpert witnesses with knowledge, and a witness found by the court to be an expert may testify, on question of damages, as to the value of the land immediately before and after the trespass complained of.

**7. Trial § 32—**

    A party desiring more specific instructions on subordinate features of the charge must aptly tender request therefor.

APPEAL by Blackwood Lumber Company from *Phillips, J.,* and a jury, at May Term, 1937, of JACKSON. No error.

This action was instituted by Sherman Owens and wife, G. L. Owens, against the defendants for the recovery of the lands described in the complaint, and for damages alleged to have been caused by the cutting and removal of timber therefrom, the construction of a logging railroad over said lands, and other acts of trespass thereon. Pending the action and before trial, the plaintiff Sherman Owens died, and his children and heirs at law were made parties plaintiff and adopted the complaint theretofore filed in the cause.

The plaintiffs allege that the tract of land in controversy is covered by State Grant No. 1155, issued to Sylvester Galloway on 18 February; 1878, and that they and those under whom they claim title have been in the adverse possession of said lands for more than 50 years, under color of title connected with said grant; 7 years possession under colorable title, and 20 years adverse possession.

The defendant Blackwood Lumber Company alleges that it is the owner in fee of the lands in controversy and had a lawful right to cut and remove the timber from and construct said railroad over said lands, the source of defendant's title being State Grant No. 251, issued in 1796, to David Allison, assignee of John Gray Blount and William Cathcart, said grant being dated 29 November, 1796, and registered in the office of the register of deeds of Jackson County on 16 October, 1882, in Book H-8, page 346. It was admitted and agreed by the plaintiffs and defendants that Grant No. 251 embraces the lands described in the complaint and claimed by plaintiffs, and that defendants have a chain of title connecting them with said grant, and that the chain of title need not be introduced in evidence except the deed from the Highland Forest Company to the Jackson Lumber Company and the deed from the Jackson Lumber Company to the Blackwood Lumber Company.

The defendant Blackwood Lumber Company also claims title to 13/14ths of such title as Sylvester Galloway may have acquired under Grant No. 1155, by deeds executed on 20 July, 1908, by all the heirs of said Sylvester Galloway, except R. J. Galloway.

At the close of plaintiffs' evidence, the court sustained the motion of the defendant Caney Fork Logging Railway Company for judgment as of nonsuit.

The issues submitted to the jury, and their answers thereto, are as follows:

"1. Are the plaintiffs the owners in fee, and entitled to the immediate possession of, the lands described in the complaint, as alleged? Answer: 'Yes.'

"2. Did the defendant wrongfully and unlawfully cut and remove the timber from the lands described in the complaint, and otherwise injure and damage said lands, as alleged in the complaint? Answer: 'Yes.'

"3. If so, what damages, if any, are the plaintiffs entitled to recover against the defendant? Answer: '$650.00.'"

The court below rendered judgment on the verdict. The defendant Blackwood Lumber Company made numerous exceptions and assignments of error and appealed to the Supreme Court. The material ones will be considered in the opinion.

*W. R. Sherrill and E. P. Stillwell for plaintiffs.*
*R. L. Phillips and F. E. Alley, Jr., for defendant.*

CLARKSON, J. This action was here before—*Owens v. Lumber Co.*, 210 N. C., 504. On the former trial a judgment of nonsuit (C. S., 567) was granted in the court below at the close of all the evidence. Upon appeal to this Court the judgment was reversed. Upon trial in the court below there was a verdict in favor of plaintiffs and judgment rendered thereon, from which defendant Blackwood Lumber Company appealed to this Court. The facts are so thoroughly set forth in the former opinion that we will only consider those relating to the material exceptions and assignments of error.

Plaintiffs introduced the original State Grant No. 1155, with plat attached thereto, dated 18 February, 1878, duly registered 15 February, 1879, in Jackson County, N. C., to Sylvester Galloway.

The *mesne* conveyances connecting the plaintiffs with said State Grant No. 1155, the source of their title, are as follows:

1. Power of attorney, dated 14 November, 1903, from Sue E. Booker, née Sue E. Galloway (Sue E. Galloway was the widow of Sylvester Galloway, to whom said grant was issued) to Rhoda E. Fisher, giving her full and complete power and authority to sell and convey lands and real estate, which was recorded in both Transylvania and Jackson counties.

2. Deeds dated 14 December, 1903, from Sue E. Booker, née Sue E. Galloway, and her husband, William Booker, and Rhoda E. Fisher, attorney in fact, to A. S. (Sherman) Owens, with full covenants and warranty and in proper form, conveying him in fee simple the lands embraced in said Grant No. 1155, for a consideration of $200.00, and with full description by metes and bounds as the same appears in said grant, which said deed was filed on 12 October, 1905, and duly registered in Jackson County on 14 October, 1905, in Book JJ, at page 31.

3. Deed dated 30 September, 1907, from Sylvanus Galloway and others, heirs at law of Sylvester Galloway, deceased, to Sherman Owens, conveying to him all their right, title, claim, and interest in the tract of land in controversy and describing the same by metes and bounds, and expressly in the premises calls attention to the fact that Sue E. Booker and husband, William Booker, for a consideration of $200.00, had conveyed said lands to Sherman Owens by a "certain deed of absolute conveyance, with full covenants of warranty, duly executed, which conveyance is now recorded in the register's office of Jackson County, State of North Carolina, in Book JJ, page 31," which said deed was recorded in Jackson County on 26 October, 1907, in Book NN, at page 489, et seq."

The signatures were, we think, substantially proven under the well settled law. "The genuineness or falsity of disputed handwriting may be proven by testimony of a witness, not an expert, who is acquainted with the handwriting of the person supposed to have written it, either because he had often seen him write, or who had acquired competent knowledge of his handwriting in some other approved manner. Abbott's Proof of Facts (4 Ed.), p. 579, par. 4, and cases cited." *Brown v. Hillsboro,* 185 N. C., 368 (372).

The defendant contends that the deeds are improperly registered and do not comply with N. C. Code, 1935 (Michie), secs. 997, 3305, and 3308.

The plaintiffs claim title (1) 7 years possession under colorable title, sec. 428, *supra;* (2) 20 years adverse possession, sec. 430, *supra.*

Taking the record evidence in its entirety, we cannot so hold; but, if error, it was not prejudicial. *Bivings v. Gosnell,* 141 N. C., 341. The deeds complained of had been on record for about thirty years. When this case was here before we said: "The deeds, if not color, are at least some evidence, under the ancient document rule, to be submitted to the jury on adverse possession for 20 or 30 years, under statutes before set forth. *Thompson v. Buchanan,* 195 N. C., 155 (160-1); *Sears v. Braswell,* 197 N. C., 515." *Owens v. Lumber Co., supra,* 504 (513); *Nicholson v. Lumber Co.,* 156 N. C., 59.

The defendant contends that the beginning corner, viz.: "Beginning on a chestnut in Rocky Knob Gap on Wolf Mountain," etc., was in dispute, and that some of the evidence was competent and some incompetent. That it ought to be awarded a new trial on account of the incompetent evidence. We think not on this record.

Let us analyze: H. R. Queen, 68 years old, testified: "My business is surveying, abstracting, and cruising. I have been surveying about 50 years, and abstracting and cruising about 30 years. I was reared about 8 or 10 miles from Grant No. 1155, issued to Sylvester Galloway, in Canada Township. . . . In company with S. M. Parker, I made

a survey of the property described in the complaint, and from that actual survey I prepared some maps. These are the maps. (Plaintiffs desire the jury to be given the maps and the witness be allowed to use them to illustrate his testimony.) Mr. Parker and I made the survey in May, 1935. The first call in Grant No. 1155, to Sylvester Galloway, says, 'Beginning on a chestnut in Rocky Knob Gap on Wolf Mountain.' I know where Rocky Knob Gap is; I have been familiar with it 30 or 40 years, and have been there quite a number of times. . . . I have seen that chestnut tree standing; the first time I saw it was about 25 or 30 years ago. . . . I saw it standing there, 20 or 30 years ago, it was marked as a corner on the northeast and east sides. The custom in this State, with reference to marks of a corner tree, is to blaze three marks on a tree on the side the line leaves it and three on the side the closing line comes back to it. This tree was marked in that way. . . . I wouldn't like to say a definite number of years old those marks on the tree were 25 or 30 years ago."

S. M. Parker, admittedly an expert surveyor, gave substantially the same testimony as Queen.

In *Hemphill v. Hemphill,* 138 N. C., 504 (506), is the following: "The declarations of John R. Hemphill in this deed to the heirs of John Brigman, as to the location of his own line, are hearsay. They are incompetent for the reason that he was interested when the same were made, and the judge below ruled correctly in excluding them. On the second point: The evidence offered from the witness John G. Chambers on the general reputation as to the location of the divisional line: Such evidence has been uniformly received in this State, and the restriction put upon it by our decisions seems to be that the reputation, whether by parol or otherwise, should have its origin at a time comparatively remote, and always *ante litem motam.* Second, that it should attach itself to some monument of boundary, or natural object, or be fortified and supported by evidence of occupation and acquiescence tending to give the land in question some fixed or definite location. *Tate v. Southard,* 8 N. C., 45; *Mendenhall v. Cassells,* 20 N. C., 43; *Dobson v. Finley,* 53 N. C., 496; *Shaffer v. Gaynor,* 117 N. C., 15; *Westfelt v. Adams,* 131 N. C., 379-384." *Lamb v. Copeland,* 158 N. C., 136; *Randolph v. Roberts,* 186 N. C., 621; *Pace v. McAden,* 191 N. C., 137; *Brown v. Buchanan,* 194 N. C., 675.

Walker McCall, a witness for plaintiffs, 85 years old, testified, in part: "Q. Now, Mr. McCall, do you know the common and general reputation in the community up there as to what was the beginning corner of Grant 1155? Ans.: Yes, sir. I guess I have known of that common and general reputation for 50 years. Q. What is that common and general reputation as to what the corner was, and where? Ans.: A

double chestnut in the Rocky Knob Gap, it was at the foot of the trail where everybody passed along, a public place going from Transylvania County to Haywood County."

There was like evidence coming under the well settled rule of law in this jurisdiction, as above set forth.

The defendant contends that the declarations of Sherman Owens to establish the corner were incompetent, that he was interested when the same were made, and were not against his interest. *Sasser v. Herring,* 14 N. C., 342; *Hoge v. Lee,* 184 N. C., 44.

There was practically no dispute about the double chestnut in Rocky Knob Gap being the beginning corner of Grant No. 1155. Many of the plaintiffs' witnesses testified that they had seen the double chestnut standing in Rocky Knob Gap marked as a corner tree on many occasions extending over a period beginning fifty years ago. This corner was definitely proven by abundant evidence of witnesses who had seen the corner, and the defendants hardly disputed its location, as the record discloses. The evidence of T. S. Fortner, a patrolman of the defendant and its predecessors in title, testified that Sherman Owens pointed the lines out to him, showed him the chestnut in Rocky Knob Gap, and said it was the corner. Conceding that this testimony was incompetent, it is harmless error and not prejudicial to the defendant for the reason that there was hardly any dispute as to what and where the beginning corner was and is. It was abundantly proven by the plaintiffs' witnesses. In view of the overwhelming evidence in the record proving the beginning corner and in the absence of a dispute of its location, the admission of this evidence, if error at all, is only technical.

Then again, Leonard Owens, a son of Sherman Owens, testified, unobjected to: "My father couldn't read. He had this deed to the land he bought, and he asked me when I got out there to read over this deed, that he wanted to trace the lines, and I did the best I could. That has been quite a bit ago and I was not very old, but we started down a call in the deed, *that he told me is what they call Rocky Knob Gap; we started on a couple of chestnuts and I read the deed over and he traced the line and we went some distance around Wolf Mountain side,"* etc.

In *Shelton v. R. R.,* 193 N. C., 670 (674), it is written: "It is thoroughly established in this State that if incompetent evidence is admitted over objection, but the same evidence has theretofore or thereafter been given in other parts of the examination without objection, the benfit of the exception is ordinarily lost. *Smith v. R. R.,* 163 N. C., 143; *Tillett v. R. R.,* 166 N. C., 515; *Beaver v. Fetter,* 176 N. C., 334; *Marshall v. Tel. Co.,* 181 N. C., 410." *Gray v. High Point,* 203 N. C., 756 (764); *Teseneer v. Mills Co.,* 209 N. C., 615 (623).

In *Bryant v. Construction Co.*, 197 N. C., 639 (642), speaking to the subject, is the following: "In any event, the evidence excepted to was cumulative. After Barkley had concluded, T. L. Starling testified on behalf of the plaintiff, without objection, to the identical fact mentioned by Barkley. In these circumstances the exceptions addressed to the admission of Barkley's testimony must be overruled. *Tilghman v. Hancock*, 196 N. C., 780; *Holeman v. Shipbuilding Co.*, 192 N. C., 236; *Gentry v. Utilities Co.*, 185 N. C., 285." On this aspect the contentions of the defendant cannot be sustained.

In *West Construction Co. v. A. C. L. Railway Co.*, 185 N. C., 43 (45-46), citing numerous authorities, the law is stated as follows on the measure of damages: "When a trespass committed upon personal property results in an injury less than the destruction or deprivation of the property, or in an action for a negligent injury to real property, the measure of damage is the reduced market value of the property proximately caused by the negligent act, and the rule generally adopted is to allow the plaintiff the difference between the market value of the property immediately before the injury occurred and the like value immediately after the injury is complete. . . . The decreased value of the property, which was the measure of the plaintiff's actual loss."

The opinion evidence of witnesses who had knowledge and that of H. R. Queen, whom the court found was an expert, was competent on the question of the measure of damages. We see no error in the charge illustrating the measure of damages. If defendant wanted more specific instructions on different aspects of the subordinate features of the case, it should have asked for same under proper prayers for instruction. *School District v. Alamance County*, 211 N. C., 213 (226). There was ample evidence of plaintiff's acts of ownership and continuity of possession. Many of the principles of law in this case are discussed in an able and well written opinion by *Winborne, J.*, in *Berry v. Coppersmith*, *ante*, 50.

The charge of the court below comprises some 26 pages and the only exception to it is to the measure of damage. It fully complies with C. S., 564. Although not tendered in time, the court below gave certain prayers and long contentions made by defendant. The charge is an able one, full and complete, and gives the law applicable to the facts. On the whole record we find no prejudicial or reversible error. In the judgment of the court below there is

No error.