This was an action in ejectment for the recovery of the possession of certain real estate described in the complaint as 130 Pine Street, Asheville, N.C. It was commenced by the issuance of summons on 17 July, 1940, which was personally served upon the defendants on 27 July, 1940, and was heard before his Honor, Frank M. Armstrong, and a jury, at the September Term, 1940, of the Superior Court of Buncombe County. The defendants entered a plea of adverse possession under color of title and pleaded sole seizin and set up as a defense to the action the seven-year statute of limitations. *Page 264 
 The facts: Counsel for both plaintiff and defendants stipulated that title to the land involved in this action was vested in B. J. Alexander under a trustee's deed dated 8 January, 1897, recorded in Book 104, at p. 119, in the office of the register of deeds, and that this is a common source of title.
All the conveyance offered in evidence by defendants were duly recorded. Plaintiff offered in evidence: (1) Deed dated 24 September, 1901, from B. J. Alexander (unmarried) to Arthur Rogers and Greenlee Nichols for the land in controversy. (2) Deed from Arthur Rogers and wife to Greenlee Nichols, dated 3 October, 1903, for one-half interest in all lands embraced in the aforesaid Alexander deed. (3) Deed from Greenlee Nichols and wife, Belle Nichols, to Arthur Rogers, dated 3 October, 1903, conveying all the land embraced in the Alexander deed except the lot of land embraced in this controversy designated as 130 Pine Street in the City of Asheville, N.C.
Greenlee Nichols, plaintiff, testified, in part: "I am 62 years old. I was born in Madison County; I married Belle Ponder. I bought the property from Mr. Alexander one day and moved into it with my wife and family the next day; I occupied the property as my home until 1913 when I went to Chattanooga, Tennessee, to work; I left my wife and children in possession of my property occupying it as our home; two of my sons were under age but old enough to work and I let their earnings go towards the support of the family; I sent money from time to time to pay taxes, doctors' bills for the children and other expenses. My wife and I never separated; we were never divorced; she continued in the possession of the property until her death in January, 1934. She and my youngest daughter Gertrude Whitesides occupied the home after the other children left and until my wife's death; Gertrude married Whitesides and she and her husband lived in the home with my wife and continued to occupy it after her death. I never signed any papers about the property; never owed anybody anything on it and my wife and family were never disturbed during my wife's lifetime and not until Mr. York claimed the property last April or May. When I heard of his claim, I came to Asheville with Mr. Dixon, my attorney from Chattanooga, and met Mr. James S. Howell in Mr. Rector's office and signed the lease which you hand me. (Plaintiff introduces lease dated May 11, 1940, signed by himself as lessor and Hattie Robinson as lessee for the premises at #130 Pine Street in the City of Asheville, to take effect on June 1, 1940, and end on May 31, 1941, at the rate of $2.50 per week, with privilege of renewal for another year at the rate of $3.00 per week.) (Cross-examination) I left here in 1913, and went to Chattanooga. I came home every two weeks during the first three years, and then didn't come back any more. The last time I was in Asheville before this suit *Page 265 
arose was in 1916. That was 24 years ago. I did not attend my wife's funeral when she died and was buried in Asheville. I think I was sick. This lease agreement offered in evidence by my lawyers was signed by a colored woman named Hattie Robinson. At the time I signed it she wasn't here. She was in Ohio. I had not seen her in 26 years. My lawyer told me I would have to get somebody in possession and I told Mr. Rector to write Hattie up in Ohio. The last time I had seen her was in 1914. The lease I offered in evidence was signed by a woman living in Ohio whom I had not seen for 26 years. I know Mr. J. E. Rector. This deed from him and his wife, Nelle Rector, to my daughter, Gertrude Whitesides, described this land by metes and bounds. Yes, the deed is dated January 12, 1927. I don't recollect now whether I authorized Mr. Rector to make a deed to her for this property. Q. Did you authorize him to convey this property to your daughter by this deed dated January 12, 1927? Ans.: I said I wanted it made to my daughter. Q. If you told Mr. Rector that you wanted it made to your daughter, then you knew that the title passed from you to your daughter? Ans.: If he got it straightened out. The Belle Nichols who made one of the deeds for this property to my daughter, Gertrude Nichols Whitesides, was my wife. Alphonso Nichols, Joseph Nichols, William Nichols and Leita Nichols Fuller and my other children. I don't know whether Sylvia Nichols is the wife of my son Joseph Nichols. I didn't know he was married. The children's names that you have read and my wife were the only members of my family. I don't know about their wives. I didn't come back from Tennessee any more after 1916. I married while I was down there. I heard my daughter say she borrowed money on the property. The house that is on the property now is not the house that was there when I left North Carolina in 1913. It is a different house. I don't know anything about my daughter losing the house by the foreclosure of a mortgage which she gave on it. I have not lived in North Carolina since 1913, but I have a little common judgment about rents as I was born and raised here, and I think the rent of this house is worth about $2.50 per week. The lease which I signed to Hattie Robinson was written up by Mr. Rector and I signed it in his office. Hattie was up in Ohio at that time and I hadn't talked to her in 26 years. I left it with Mr. Rector and told him to get somebody in the house. (Re-direct examination) I never heard of any claim by S. A. Lynch or J. E. Rector to my property; never heard of any adverse claim by anybody until a short time ago, about March or April of this year. I did not marry until after my wife died."
Gertrude Whitesides, a witness for plaintiff, testified, in part: "Greenlee Nichols is my father; I was born at 130 Pine Street and lived there until Mr. York put me out in June, 1940. My mother lived in the house *Page 266 
and occupied it as her home continuously until her death on January 7, 1934; nobody ever disturbed her possession; she and my father were not separated; they were never divorced; my father visited us a few times after he went to Chattanooga; we heard from him from time to time; he sent us money. I married and my husband lived with me and my mother at 130 Pine Street; I went into possession as one of my father's children and a member of his family; and I occupied the place with my mother until her death and I continued in possession until Mr. York put me out. (Cross-examination) I am familiar with the various deeds which were made to me and which were read to the jury a few minutes ago while you were examining my father. I got a deed from my mother and another deed from Mr. Rector and wife and another from my brothers and sister. At that time my father had been gone from North Carolina so long that we all thought he was dead. All of the family was putting the title in me. I went to a concern in the Medical Building and borrowed $1,500.00 on the property, and I made payments for a while and I couldn't make the payments and they foreclosed the property. Then I rented it from the Consolidated. I knew the Consolidated bought it and afterwards I leased it from them. The paper you hand me and which is marked `Defendant's Exhibit #1' for identification is my signature to one of the leases. The other marked `Exhibit #2' is also my signature. Mr. Connor, the Welfare Officer of Buncombe County, signed one of the leases for me and he paid the rent for me for a while. After Mr. York bought the property I paid him rent. Finally suit was brought to put me out. I was before Mr. Bramlett, Justice of the Peace. Mr. Rector was my attorney in that suit. A judgment was rendered to put me out of possession. When I gave the mortgage on the property I represented that it was my property. My father had been gone so long that I thought he was dead and after getting the deeds from Mr. Rector and my brothers and sister and my mother, who is now dead, I gave the mortgage on the property. The amount of the loan was $1,500.00. We remodeled the house. The photograph you show me is a picture of the new house. I couldn't say how long we got support from the Welfare Department. My mother died on the 6th day of January, 1934. I know that my husband and I made affidavits that our father was dead at the time we got the loan from the Mortgage Company and the Company granted the loan after they got the affidavits and deeds from everybody. After the Consolidated bought the property at foreclosure sale, they brought a suit against me and got judgment and officer John Garrison put me out then. They let me go back because I was sick. After I got back in I signed a new lease. The loan which I got through the Federal Mortgage was to pay Mr. Thompson, the Contractor, for remodeling the house. Thompson was paid after we got the loan. That *Page 267 
is what the loan was made for. Yes, I have a suit against Mr. York and his wife for $6,000 to recover damages because I was put out of the house under execution. It is here on the docket awaiting the outcome of this case. When I leased this property from Mr. York he gave me a copy of the lease agreement. He said it was the same kind of lease which I had previously signed with the Consolidated. After I lost the property by foreclosure I paid rent. I paid rent to the Consolidated until they sold it to Mr. York and then I paid it to him. (Re-direct examination). My mother, Belle Nichols, was never disturbed in her possession; she lived there in peaceable and quiet possession until her death on January 7, 1934; neither S. A. Lynch nor J. E. Rector ever had any possession of the property or claimed any ownership of it, and their quitclaim deeds were made without payment of any consideration."
Arthur A. York, one of the defendants, testified in substance: "I purchased the property at 130 Pine Street from the Consolidated Realty Company' my deed is dated March 27, 1940, and is recorded in Book 524, at page 446. I found Gertrude Whitesides and her two children in possession; I demanded possession about the time I bought the property; she told me her father was living and that he owned the property; she referred me to her attorney, James S. Howell; she afterwards signed a lease dated April 2, 1940; I brought ejectment suit against her before J. H. Bramlett, J. P."
John Garrison testified: "I am Deputy Sheriff; in 1935 or 1936, under an execution issued out of the General County Court pursuant to a judgment of that court dated December, 1932, I put Gertrude Whitesides out of possession, and the Consolidated Realty Company into possession; I could not remove her from the property under previous executions issued on that judgment on account of illness in the family."
The defendants, over objection and exception of the plaintiff, offered in evidence the following records:
1. Commissioner's deed from Charles G. Lee, Commissioner, to S. A. Lynch, dated 1 November, 1911, registered on 1 November, 1911, in Book 172, page 549, office of the register of deeds of Buncombe County. It was stipulated that this deed covered the lands in controversy in this action, together with certain additional tracts.
2. Quitclaim deed from S. A. Lynch to James E. Rector and wife, Nellie H. Rector, dated 22 December, 1926, registered on 22 December, 1926, in Book, 370, page 255, office of the register of deeds for Buncombe County. It was stipulated that the foregoing deed covered the lot in controversy in this action, together with certain additional lots.
3. Quitclaim deed from J. E. Rector and wife, Nellie H. Rector, to Gertrude Nichols Whitesides, dated 12 January, 1927, and registered 12 January, 1927, in Book 370, page 254, office of the register of deeds *Page 268 
for Buncombe County. It was admitted that this deed described the lot involved in this action.
4. A quitclaim deed, dated 11 July, 1927, from Belle Nichols to Gertrude Nichols Whitesides, conveying the land in controversy in fee simple.
5. A deed from Alphonso Nichols and others, children of plaintiff, to Gertrude Nichols Whitesides, dated 18 May, 1927, conveying the land in controversy in fee simple. In the deed is the following: "That, whereas, the party of the second part and the parties of the first part are the sole heirs and survivors of Greenlee Nichols," etc.
6. Deed of trust from Gertrude Whitesides and husband, Nelson Whitesides, to Central Bank Trust Company, Trustee, dated 12 July, 1927, and registered 12 July, 1927, in Book of Deeds of Trust 260, page 106, consideration $1,500.00. It was agreed that this deed of trust conveyed the lot in controversy in this action.
7. Deed from Asheville Safe Deposit Corporation, Successor Trustee to Consolidated Realty Corporation, dated 6 October, 1932.
8. Deed from Consolidated Realty Corporation to Arthur A. York and wife, Virginia York, dated 27 March, 1940, registered in Book of Deeds 534, page 446, which deed conveyed to defendants the lot at #130 Pine Street, being the same involved in this action.
9. The original summons, complaint, default judgment, in an action instituted in the General County Court of Buncombe County by Consolidated Realty Corporation against Gertrude Whitesides and husband, Nelson Whitesides, said judgment being dated December, 1932, and adjudging that Gertrude Whitesides and husband, Nelson Whitesides, are in the wrongful possession of said property, and the title and right of possession of said property is in Consolidated Realty Corporation.
10. The leases executed from Gertrude Whitesides to Consolidated Realty Corporation and Arthur York, respectively, being the same referred to in the testimony of Gertrude Whitesides, page 15 of this record, to wit, leases dated 9 May, 1934, and 16 February, 1938, to Consolidated, and lease dated 2 April, 1940, to Arthur A. York and Company.
The issue submitted to the jury (by consent) was as follows: "Have the defendants, Arthur York and wife, Virginia York, and those under whom they claim, been in the adverse possession of the property described in the complaint under known and visible lines and boundaries and under colorable title for seven years or more next prior to the institution of this action, as alleged in the answer?" The jury answered "Yes."
The court below rendered judgment on the verdict. The plaintiff made numerous exceptions and assignments of error and appealed to *Page 269 
the Supreme Court. The material ones and necessary facts will be set forth in the opinion.
The question involved: Is the seven-year statute of limitations, pleaded by the defendants in their answer, available to them as a defense? We think so.
Two contentions were made by plaintiff's counsel in the trial court: (1) That the deeds offered in evidence by defendants were not sufficient to constitute color of title; (2) that a wife cannot establish title to her husband's real estate by adverse possession. Neither contention can be sustained on the record.
N.C. Code, 1939 (Michie), sec. 428, is as follows: "When a person or those under whom he claims is and has been in possession of any real property, under known and visible lines and boundaries and under colorable title, for seven years, no entry shall be made or action sustained against such possessor by a person having any right or title to the same, except during the seven years, next after his right or title has descended or accrued, who in default of suing within that time shall be excluded from any claim thereafter made; and such possession, so held, is a perpetual bar against all persons not under disability."
We think, under the facts and circumstances of this case, that it is unnecessary to consider the 20-year adverse possession, under secs. 430 and 433, supra.
It is contended by plaintiff that the possession of plaintiff's wife, Belle Nichols, or his daughter, Gertrude Whitesides, was not adverse to him. We cannot so hold on this record, and the jury decided to the contrary under competent evidence and a charge of the court below free from error. The plaintiff testified that he left his wife and children in 1913 and went to Chattanooga, Tenn. That his wife died in January, 1934, in Asheville, N.C., and he did not attend her funeral. That they were never legally separated or divorced. That after leaving in 1913 he came home every two weeks the first three years. The last time he was in Asheville before the suit was brought was in 1916 — 24 years. J. E. Rector had a tax title deed to the property and he and his wife deeded it to plaintiff's daughter, Gertrude Whitesides, on 12 January, 1927. Plaintiff testified: "Q. Did you authorize him to convey this property to your daughter by this deed dated January 12, 1927? Ans.: I said I wanted it made to my daughter." Plaintiff never paid the taxes and the land was sold for taxes in 1909. He never supported his wife, but *Page 270 
abandoned her. His wife and his children in 1927 made deeds to Gertrude Whitesides, the other child, who in turn borrowed money to build on the land. It was foreclosed and defendant claims adverse possession to thelocus in quo for seven years and more, though conveyances. Gertrude Whitesides leased the property after it was foreclosed from the purchaser and afterwards under court proceedings a judgment dispossessing her was rendered, from which she never appealed.
N.C. Code, supra, sec. 2530, is as follows: "Every woman whose husband abandons her, or maliciously turns her out of doors, shall be deemed a free trader, so far as to be competent to contract and be contracted with, and to bind her separate property, but the liability of her husband for her reasonable support shall not thereby be impaired. She may also convey her personal estate and her real estate without the assent of her husband."
Abandonment of the wife by the husband is sufficient for her to execute a valid conveyance of her lands without his joinder.
In Keys v. Tuten, 199 N.C. 368 (370), we find: "The validity of C. S., 2530, notwithstanding the provisions of section 6 of Article X of the Constitution, has been sustained by the decisions of this Court, upon the ground, as stated by Faircloth, C. J., in Hall v. Walker, 118 N.C. 377,24 S.E. 6, that `there is no constitutional inhibition upon the power of the Legislature to declare where and how the wife may become a free trader. Article X, section 6, was not intended to disable; but to protect her.' InBachelor v. Norris, 166 N.C. 506, it is said: `The constitutionality of the statute authorizing a married woman to execute a valid conveyance of real property without the joinder of her husband, when she has been abandoned by her husband, has been sustained in several decisions of this Court. Hall v. Walker, 118 N.C. 377, 24 S.E. 6; Brown v. Brown,121 N.C. 8, 27 S.E. 998; Finger v. Hunter, 130 N.C. 531,41 S.E. 890.' See, also, Vandiford v. Humphrey, 139 N.C. 65."Pardon v. Paschal, 142 N.C. 538; Hancock v. Davis, 179 N.C. 282
(284); Whitten v. Peace, 188 N.C. 298 (302-3).
In Locklear v. Savage, 159 N.C. 236 (237-8), it is written: "What is adverse possession within the meaning of the law has been well settled by our decisions. It consists in actual possession, with an intent to hold solely for the possessor to the exclusion of others, and is denoted by the exercise of acts of dominion over the land, in making the ordinary use and taking the ordinary profits of which it is susceptible in its present state, such acts to be so repeated as to show that they are done in the character of owner, in opposition to right or claim of any other person and not merely as an occasional trespasser. It must be decided and notorious as the nature of the land will permit, affording unequivocal *Page 271 
indication to all persons that he is exercising thereon the dominion of owner," citing many authorities. Owens v. Lumber Co., 210 N.C. 504;Stephens v. Clark, 211 N.C. 84 (89); Berry v. Coppersmith, 212 N.C. 50.
In Alsworth v. Cedar Works, 172 N.C. 17 (23), it is stated: "Colorable title, then, in appearance is title, but in fact is not, or may not be, any title at all. It is immaterial whether the conveyance actually passes the title to property, for that is not the inquiry. Does it appear to do so, is the test; and any claim asserted under the provisions of such a conveyance is a claim under color of title, and will draw the protection of the statute of limitations to the possession of the grantee if the other requisites are present. Dickens v. Barnes, 79 N.C. 490. `A deed, though it be defective, will constitute color of title.' So the rule is broadly stated in a very large number of decisions that a deed purporting to convey the land in controversy will give color of title to a possession taken under it, even though it be void. And a deed void for matters dehors the instrument will constitute color of title, provided it purports to convey the land in controversy. 1 Cyc., 1085-1087." Neal v. Nelson, 117 N.C. 393
(405); Dorman v. Goodman, 213 N.C. 406 (413).
The court below charged the jury: "Adverse possession may be said to be based on distinct elements, though when considered they are in some respects interlocking or overlapping, and those elements are as follows: (1) Actual possession, (2) open and notorious possession, (3) continuous possession, (4) exclusive possession, (5) hostile possession, and (6) under the evidence and pleadings in this case, under color of title, and (7) under known and visible lines and boundaries. Taking up these different elements, in order that you may understand what we mean by adverse possession."
In Vanderbilt v. Chapman, 172 N.C. 809 (812), it is said: "When the continuity and identity of possession is established between a subsequent and next preceding and prior occupant, shutting out all opportunity of interruption in favor of the true title, in such case the claimant or subsequent holder may, in connection with his own, avail himself of the adverse occupation of his predecessors and refer the same to the original entry and the color of title under which it was made."
In detail the court defined accurately each element, citing authorities from this Court. The court, with minuteness, gave the contentions on each side, and charged: "So, this case finally resolves itself to certain questions of fact for you to determine, then apply the law to it as given to you by the court and say what the truth is. That is what the word `verdict' means — to speak the truth. . . So, in this case, the court charges you that if the defendants have satisfied you by the greater weight of the evidence that they and those under whom they claim, went *Page 272 
into possession of the lands in question under color of title, as heretofore defined to you by the court, and such possession was actual, open and notorious and continuous, exclusive and hostile, under known and visible lines and boundaries, in accordance with the definitions of the court which the court has previously given to you, and that such possession continued for a period of at least seven years, then the court charges you that would constitute adverse possession, under Consolidated Statutes, sec. 428, which the court read and explained to you. If you find those to be the facts, by the greater weight of the evidence, you will answer the issue `Yes.' . . . If you fail to so find, that is, if the defendants have failed to so satisfy you, the burden being on them, it will be your duty to answer the issue `No.'"
We see no estoppel, as contended by plaintiff, in the purchase of the land by the daughter, Gertrude Whitesides. "I said I wanted it made to my daughter." The wife, having been abandoned by her husband, had a right to convey it to Gertrude Whitesides.
Plaintiff contended that "The ruling of the trial court that C. S., 428, the seven-year statute of limitations, could in any event apply as a bar to plaintiff's action, and insists that if any such statute applies, it is C. S., 433, the twenty-year statute of limitations; and challenges also the sufficiency of the charge of the court to measure up to the requirements of C. S., 564." We cannot so hold.
In Pardon v. Paschal, 142 N.C. 538 (539), it is said: "The only exception presented in the brief of the appellant is that there is no sufficient evidence of abandonment, and that the judge should have so instructed the jury. It nowhere appears in the record that the plaintiff requested the court so to charge, or that the plaintiff handed up any prayer for instructions to the jury. He cannot be heard, therefore, to raise that question by motion to set aside the verdict. `If he is silent when he should speak, he ought not to be heard when he should be silent.'Boon v. Murphy, 108 N.C. 187, and cases cited. If it is any satisfaction to the plaintiff to know it, we will state that an examination of the record discloses ample evidence to justify the court in submitting the matter to the jury."
The court below charged carefully the law applicable to the facts on every aspect of the case.
We see no merit in the other exceptions and assignments of error made by plaintiff. The plaintiff's brief, with authorities cited, is persuasive, but not convincing nor applicable.
For the reason given, we find
No error. *Page 273